440

BEER ET AL., APPELLANTS, *v.* GRIFFITH ET AL., APPELLEES.

(No. 77-745—Decided June 28, 1978.)

*Messrs. Knell & Freehafer* and *Mr. George H. Knell,* for appellants.
*Messrs. Laughbaum & Eckstein* and *Mr. Rolland. E. Laughbaum,* for appellees.

*Per Curiam.* Authority to pass upon the disqualification of a judge of the Court of Common Pleas is vested in the Chief Justice under Section 5(C) of Article IV of the Ohio Constitution, which reads as follows:

"The chief justice of the supreme court or any judge of that court designated by him shall pass upon the disqualification of any judge of the courts of appeals or courts of common pleas or division thereof. Rules may be adopted to provide for the hearing of disqualification matters involving judges of courts established by law."[2]

Since only the Chief Justice or his designee may hear disqualification matters,[3] the Court of Appeals was with-

---

[2] See *State, ex rel. Pratt,* v. *Weygandt* (1956), 164 Ohio St. 463, and *State, ex rel. Chute,* v. *Marshall* (1922), 105 Ohio St. 320. In addition, it must be noted that no such rules have heretofore been provided.

[3] The statutory framework within which the Chief Justice must determine the disqualification of a common pleas judge is provided in R. C. 2701.03, which reads:

"When a judge of the court of common pleas is interested in a cause or matter pending before the court, is related to, or has a bias or prejudice either for or against, a party to such matter or cause or to

out authority to pass upon disqualification or to void the judgment of the trial court upon that basis. Although a judge would be without power to hear and determine a cause after disqualification, his judgment, however erroneous, before disqualification is not void. We remand the cause to the Court of Appeals to pass upon the other errors which were assigned.

*Judgment accordingly.*

O'Neill, C. J., Herbert, W. Brown, P. Brown and Sweeney, JJ., concur.

Celebrezze and Locher, JJ., dissent.

Locher, J., dissenting. I respectfully dissent from the opinion of the majority of the court.

R. C. 2701.03 provides a mechanism for determining the disqualification of a judge; however, in the instant cause, the reason for seeking disqualification of the trial judge did not appear until argument was had in the Court of Appeals. At this juncture, under questioning by members of that court, counsel for appellees first learned that the trial judge was the uncle of counsel for appellants.

his counsel, or is otherwise disqualified to sit in such cause or matter, on the filing of an affidavit by any party to such cause or matter, or by the counsel of any party, setting forth the fact of such interest, bias, prejudice, or disqualification, the clerk of the court of common pleas shall enter the fact of such filing on the trial docket in such cause * * *. The chief justice shall designate and assign some other judge to take the place of the judge against whom such affidavit is filed. The judge so assigned shall try such matter or cause. Such affidavit shall be filed not less than three days prior to the time set for the hearing in such matter or cause."

The effect of the deleted portion of the statute (which reads: "and forthwith notify the pending judge of the court of appeals for the district in which such court of common pleas is located. If such presiding judge finds that such judge of the court of common pleas is disqualified he shall forthwith notify the chief justice of the supreme court.") has clearly been superseded by Section 5(C) of Article IV of the Ohio Constitution as amended in 1973.

Clearly, the Code of Judicial Conduct promulgated and adopted by this court is germane to a correct resolution of this appeal. To rely on R. C. 2701.03, therefore, begs the question.

Canon 3 of the Code of Judicial Conduct reads, in pertinent part, as follows:

"C. Disqualification

"(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

"* * *

"(d) he or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

"* * *

"(ii) is acting as a lawyer in the proceeding * * *."

The procedure for circumventing Canon 3C(1)(d)(ii) is through a remittal signed by all parties and counsel after the nepotistic relationship has been ascertained.[4]

The burden of disclosure of relationship is upon the judge. Counsel should not be required to trace the family trees of the parties and their attorneys vis-a-vis the genealogical chart of the jurist.

In my judgment the standards of the Code of Judicial Conduct mandate the court to advise counsel where a relationship, such as here, exists. The Preface to the code reads as follows:

"This Code, consisting of statements of norms denom-

---

[4]Canon 3D of the Code of Judicial Conduct reads as follows:

"D. Remittal of Disqualification

"A judge disqualified by the terms of Canon 3C(1)(c) or Canon 3C(1)(d) may, instead of withdrawing from the proceeding, disclose on the record the basis of his disqualification. If, based on such disclosure, the parties and lawyers, independently of the judge's participation, all agree in writing that the judge's relationship is immaterial or that his financial interest is insubstantial, the judge is no longer disqualified, and may participate in the proceeding. The agreement, signed by all parties and lawyers, shall be incorporated in the record of the proceeding."

inated canons, the accompanying text setting forth specific rules, and the commentary, states the standards that judges should observe. The canons and text establish mandatory standards unless otherwise indicated."

It is both indelicate and unreasonable for attorneys to raise questions of possible conflict when the court is fully aware of the facts.[5]

The entire proceedings were suffused by the proscribed relationship, and, hence, absent a written remittal, the entire procedings should be deemed void *ab initio*.

---

[5]Counsel for appellees was from a county other than the one in which the trial took place and was not aware that the trial judge, a retired judge sitting by assignment, and counsel for appellants, were "uncle-nephew."