DECISION
Plaintiff-appellant, Roy Walker, was employed at Continental Baking Company ("Continental").[1] On October 23, 1993, Walker was walking up the steps which led to a walkway over a conveyor line for bread. The top step broke and Walker fell, injuring his back, neck and spine. The stairway was designed, fabricated and installed at Continental by appellee, Blackwood Sheet Metal. Walker, along with his wife, Victoria L. Walker (hereinafter "appellants"), filed suit against appellee alleging negligence, breach of express and implied warranties and strict liability.
A jury trial was conducted and the jury interrogatories demonstrated that the jury found that appellee was negligent with respect to the design, fabrication, testing and inspection of the stairway but that appellant had not proven by a preponderance of the evidence that appellee's negligence directly and proximately caused injury or damages to appellants.
Appellants filed a motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial. The trial court overruled appellants' motion for judgment notwithstanding the verdict or for a new trial and appellants appealed and raise the following assignments of error:
A. FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT AND FRANKLIN COUNTY COMMON PLEAS COURT ADMINISTRATION DENIED PLAINTIFFS/APPELLANTS FAIR TRIAL AND DUE PROCESS OF LAW IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION IN THAT THE UNFITNESS AND PARTIALITY OF JURORS WAS NOT DETERMINED PURSUANT TO OHIO REVISED CODE [§] 2313.03 AND 2313.42.
 B. SECOND ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN NOT ORDERING A NEW TRIAL FOR FAILING TO DISCLOSE A PREVIOUS LAWYER EMPLOYMENT ON A RELATED ISSUE BEFORE THE ATTORNEYS.
 C. THIRD ASSIGNMENT OF ERROR
 THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.
 D. FOURTH ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION AND COMMITTED PLAIN ERROR BY FAILING TO INSIST THAT THE JURY BE SELECTED FROM A REPRESENTATIVE CROSS-SECTION OF THE COMMUNITY AND PROTECT THE JURORS FROM EXTENSIVE AND EXTRANEOUS PREJUDICIAL INFORMATION.
 E. FIFTH ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN NOT DIRECTING A VERDICT FOR THE PLAINTIFF BASED ON NEGLIGENCE PER SE.
 F. SIXTH ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN NOT ORDERING A NEW TRIAL AND ABUSED ITS DISCRETION IN ALLOWING DEFENDANT'S COUNSEL INQUIRE AND USE THE WORDS WORKERS' COMPENSATION CONTRARY TO THE COURT'S ORDER AND OVER PLAINTIFF'S COUNSEL OBJECTION.
By the first and fourth assignments of error, appellants contend that they were denied a fair trial and due process because the fitness and impartiality of the jurors was not determined pursuant to R.C. 2313.03 and 2313.42. Appellants argue that the jurors were prejudiced by political issues being raised in the state at that time. The trial occurred on October 24, 1997 through October 31, 1997. On November 4, 1997, voters were to decide whether Issue 2, S.B. No. 45, a bill enacting significant changes to the workers' compensation system would be subject to a referendum. There was extensive media coverage concerning the election. Appellants contend that this media coverage unduly prejudiced the jurors against them because Walker had received workers' compensation benefits.
Appellants did not object to the jurors in the trial court. Generally, an issue need not be considered on appeal when it was apparent at the time of trial but not raised. RepublicSteel Corp. v. Bd. of Revision (1963), 175 Ohio St. 179. Appellants did file a motion to submit a written questionnaire to jurors prior to voir dire which the trial court overruled as unnecessary since none of the questions concerned workers' compensation; however, the trial court did permit appellants' counsel to ask any of the questionnaire questions during voir dire. (Tr. Vol. I, 5-7.) The trial court also gave appellants three options concerning Issue 2, which were: 1) inquire about prejudice against workers' compensation and its recipients during voir dire; 2) dismiss the case and refile after the election; or 3) ask for a limiting instruction. (Tr. Vol. I, 27.) Appellants did not exercise these options. The trial court also prohibited the use of the term "workers' compensation" during the trial to eliminate prejudice. Inasmuch as appellants failed to object at trial, this issue is waived.
In the fourth assignment of error, appellants contend that the trial court's failure to insist that the jury be selected from a representative cross-section of the community and protect the jurors from extensive and extraneous prejudicial information constituted plain error. Generally, the plain error doctrine is almost exclusively applied in the criminal area pursuant to Crim. R. 52(B). "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, syllabus.
In their brief to this court, appellants contend they submitted an affidavit in support of their position that the jurors were improperly influenced during deliberations by extraneous materials. The affidavit is not in the record on appeal and was not attached to their motion for judgment notwithstanding the verdict or for a new trial. An appellate court is required to consider only that which is contained in the record on appeal, Blosser v. Carter (1990), 67 Ohio App.3d 215,220, and there is no evidence contained within the record on appeal that the jurors were prejudiced by the election news and Issue 2.
Appellants' first and fourth assignments of error are overruled.
By the second assignment of error, appellants contend the trial court erred in not ordering a new trial. The basis for this assignment of error is that the trial judge had previously been employed as the chief legal officer to former Governor Voinovich and the governor was vocal in his criticism of the workers' compensation system and its need for reform. Appellants allege that the trial judge was biased. Appellants did not raise this issue in their motion for new trial because appellants' counsel was unaware of the trial judge's previous employment until "sometime in 1998." (Appellants' Second Corrected Brief, 8.)
Appellants point to no specific examples of bias and did not previously raise this issue. In Beer v. Griffith (1978),54 Ohio St.2d 440, the court held that only the Chief Justice of the Supreme Court of Ohio has the authority to pass upon the disqualification of a common pleas judge. R.C. 2702.03 sets forth the proper procedure to raise this issue. Appellants' second assignment of error is not well-taken.
By the third assignment of error, appellants contend that the verdict was against the manifest weight of the evidence and contrary to law. Judgments which are supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v.Foley Construction Co. (1978), 54 Ohio St.2d 279, syllabus. Appellants' brief focuses on the medical testimony stating that Walker sustained an injury as a direct and proximate cause of appellee's negligence and argues that such medical testimony is unrefuted and, therefore, appellants are entitled to judgment. The issue, however, was not whether Walker sustained an injury as a result of the fall, but whether appellee was negligent and whether that negligence was the proximate cause of his injury. The jury found that Walker had sustained an injury, but did not find that the injury was the result of appellee's negligence.
Appellants also argue that appellee was negligent because it did not obtain a building permit and submit plans for the stairway before it was constructed. Appellants' welding expert testified that the welds did not meet the code requirements. (Tr. Vol. III, 179.) However, he also testified that he did not see the welds until several years later and after repairs had been made. (Tr. Vol. III, 191-192.) Another expert for appellants admitted on cross-examination that, during his deposition, he testified that the building code violations did not cause or contribute to Walker's accident. (Tr. Vol. II, 177.) Appellee's retired president, Thomas Blackwood, testified that the Columbus City Building Code and the need for a permit was not applicable in this case because the steps were portable. (Tr. Vol. I, 227-228.)
Appellee also presented evidence that appellant planned his fall. The stairway had been constructed in 1988, and there had been no incidents prior to this accident in October 1993. (Tr. Vol. I, 144; 191.) Interstate, formerly Continental, not appellee, was responsible for any maintenance or repair projects but Interstate had no routine preventative maintenance program. (Tr. Vol. I, 142, 144.) Walker's supervisor testified that he had discussions with Walker concerning Walker's feelings that Walker had been the victim of racial discrimination. (Tr. Vol. I, 139.) The supervisor also testified that the step had been loose for approximately one week before Walker's accident. (Tr. Vol. I, 145.) Another mechanic who worked with Walker, Oscar Tumeo, testified that he had many discussions with Walker concerning Walker's dissatisfaction with Interstate because he had not been promoted in twenty years and that Walker felt he had been the victim of racial discrimination. (Tr. Vol. IV, 102.) Tumeo also testified that he had discussed with Walker, on the morning of Walker's accident, that the step at issue had not been repaired and Walker told Tumeo that, if he was hurt, he would not have to work. (Tr. Vol. IV, 104-105.) Tumeo stated that Walker told him later that Walker could not wait to settle his lawsuit to stop working at the bakery. (Tr. Vol. IV, 109.) Tumeo also testified that, after he testified during his deposition, Walker was hostile and Tumeo felt threatened by Walker. (Tr. Vol. IV, 110.) Thus, there is sufficient competent, credible evidence to support the jury's finding that any negligence of appellee was not the proximate cause of Walker's accident. Appellants' third assignment of error is not well-taken.
By the fifth assignment of error, appellants contend that the trial court erred in not directing a verdict for appellants based on negligence per se. While appellants did move for a directed verdict based on negligent design (Tr. Vol. IV, 220), appellants did not make a motion for a directed verdict based on "negligence per se." Civ.R. 50(B)(3) requires the movant to specifically state the grounds for the motion. Failure to raise a specific issue in a motion for directed verdict constitutes a waiver of that issue on appeal. McMunn v. Mt.Carmel Health (Apr. 30, 1998), Franklin App. No. 97APE05-643, unreported (1998 Opinions 1545, 1566).
Appellants' fifth assignment of error is not well-taken.
By the sixth assignment of error, appellants contend that the trial court erred in not ordering a new trial and abused its discretion in allowing appellee's counsel to inquire and use the words "workers' compensation" contrary to the court's order and over the objection of appellants' counsel. Appellants' argument again focuses on the political advertising and news regarding Issue 2.
Appellants filed a motion in limine and the trial court ruled that appellee could inquire as to appellants' workers' compensation claim but could not discuss settlements or monies (Tr. Vol. I, 17, 28). During trial, after appellee's counsel used the words "workers' compensation," the court prohibited the use of the words "workers' compensation" in favor of "claim for injury for a work-related injury." (Tr. Vol. II, 101-102.)
In spite of the errors appellants claim involving appellee's counsel's discussion of workers' compensation, appellants themselves raised the issue directly in their case-in-chief. Appellants called the workers' compensation safety coordinator to testify that Interstate paid $28,000 to $29,000 in medical bills for Walker. (Tr. Vol. IV, 60.) Given that testimony, the claimed errors do not prejudice appellants.
The first instance which appellants contend constitutes error is that appellee's counsel asked Walker whether the treating physician was familiar with the workers' compensation system. (Tr. Vol. II, 76.) Appellee's counsel objected and the objection was sustained. Ordinarily, a jury is presumed to have followed instructions given by the court. Pang v. Minch (1990), 53 Ohio St.3d 186, paragraph four of the syllabus.
The second instance which appellants contend constitutes error is that appellee's counsel asked Walker the following:
 Now, from your experience with the injured finger, Mr. Walker, you had some familiarity with the worker's compensation system in Ohio? [Tr. Vol. II, 99.]
Appellants' counsel had already asked Walker whether he had filed a claim for an industrial injury for any of his previous injuries and Walker answered he had filed a claim when he cut off the tip of his finger. (Tr. Vol. II, 32.) The trial court ruled that appellee's counsel could inquire as to the prior claims. (Tr. Vol. I, 13, 16-17.) It was only after this question was asked that the trial court specifically prohibited the use of the words "workers' compensation." The trial court was willing to give a limiting instruction but appellants' counsel declined. (Tr. Vol. II, 102-103.) Since Walker had already admitted he had filed a claim and the workers' compensation safety coordinator testified, there is no prejudice in this use of the words "workers' compensation."
The next instance appellants contend constitutes error is that appellee's counsel asked Walker's treating physician whether she handles a "fair amount of worker's compensation, industrial accident-type cases?" (Tr. Vol. III, 109.) Appellants' counsel did not object.
The last instance which appellants argue constitutes error is that appellee's counsel asked Walker's treating physician whether administratively she handles "industrial injuries" differently. (Tr. Vol. III, 118.) Appellee's counsel did not use the words "workers' compensation," so no error occurred.
Given the testimony in appellants' case-in-chief, these alleged errors do not prejudice appellants. Appellants' sixth assignment of error is not well-taken.
For the foregoing reasons, appellants' six assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
TYACK and PETREE, JJ., concur.
[1] Continental filed a motion to intervene as a party plaintiff in order to assert its claim for subrogation, which the trial court granted. Continental then filed a motion for leave to file an amended complaint to clarify and modify its name because Continental merged into Interstate Brands Corporation ("Interstate"). Interstate and appellants reached a settlement and Interstate voluntarily dismissed its cause of action with prejudice pursuant to Civ.R. 41(A).