ESTATE OF JOSEPH DEZSO JOURNAL ENTRY AND OPINION
This is an appeal from an order of Probate Judge Thomas A. Swift, sitting by assignment, that mandated appellant Jeffrey C. Keith's share of the estate of Joseph Dezso be distributed to Keith's judgment creditors. Keith, who is incarcerated, claims he should have been conveyed from his prison to attend a hearing on the issue and that prior orders resulting from the Dezso estate litigation are void because the judges involved had no jurisdiction. We do not agree and affirm.
Although this case presents narrow issues of fact and law, some factual background is necessary. Keith, an attorney once licensed to practice law in Ohio, had a relationship with Christine Dezso between approximately 1979 and 1992. On July 9, 1993, her nineteen-year-old son, Joseph, was electrocuted and died while swimming at Put-in Bay. The distribution of proceeds from the settlement of the resultant survivor action and wrongful death suit became the subject of much litigation.
In August 1993 Joseph Dezso's purported will, which named Keith executor and beneficiary to fifty percent of the estate, was admitted to probate. Later Keith, although he had no biological or legal relationship with Joseph Dezso, also claimed a share of the wrongful death proceeds as a father-figure. The litigation became more complicated when Keith was indicted for a string of arsons in December 1994, resigned as executor and renounced any inheritance under the will. Keith eventually succeeded in having the renouncement of his inheritance invalidated as untimely, although his resignation as executor was accepted, and appellee Helen Gall, Joseph's grandmother named as Administrator W.W.A.
Keith was convicted on five counts of arson and one count of grand theft,[1] which then required him to conduct his arguments involving the settlement proceeds from prison. Prior to the arson charges, Keith had gained control of ninety-two year-old Elizabeth Fuchs' affairs, raided her bank accounts and valuables, sold her house, and left her in a nursing home.[2] He was indicted and subsequently convicted of theft, medicaid fraud, securing writings by deception, and forgery. He then was indicted and convicted for offenses involving his conduct in the Dezso estate, including forging beneficiaries' signatures on insurance checks, and forging Joseph Dezso's will.[3]
Proceedings in this case have continued since the August 1993 admission of Joseph Dezso's will to probate. On September 11, 1997, Probate Judge John E. Corrigan approved a $710,000 settlement of Dezso's wrongful death case, ruled that Keith had failed to prove his father-figure status by clear and convincing evidence and was ineligible to share in any recovery for the wrongful death, found Keith was a beneficiary under the purported will for that portion of the settlement allocated to the decedent's claim for conscious pain and suffering, and in addition could recover case expenses incurred in prosecution of the wrongful death case. Keith appealed this ruling, but a limited remand was ordered after the parties reached a settlement agreement allowing Keith to participate in the recovery.
In order to effectuate this settlement, the parties petitioned for relief from the September 11, 1997 judgment under Civ.R. 60(B). Judge Fred V. Skok, sitting by assignment, denied the motion on March 19, 1998, and Keith's appeal was reinstated and consolidated with the settling parties' appeal from the March 19th order.
On March 19, 1998, the conservator for Elizabeth Fuchs filed a motion to compel distribution of Keith's portion of the Joseph Dezso estate to Fuchs, and a motion for preliminary injunction to stop distribution to Keith pending resolution of the motion to compel. On April 28, 1998, Judge Skok granted the preliminary injunction to stop distribution to Keith until the pending appeal could be resolved and hearings held to determine the proper distribution.
This court reversed the denial of the Civ.R. 60(B) motion, In re Dezso (Nov. 5, 1998), Cuyahoga App. Nos. 73207, 74357, unreported, finding that the judge abused his discretion when he failed to give effect to the parties' agreed resolution and dismissed Keith's earlier appeal as moot because he agreed with the appeal to validate the settlement. Id. Pursuant to the settlement agreement, Keith was to receive a total of $30,000 — $19,665.23 for expenses he incurred in pursuing the wrongful death suit, and $10,334.77 of the wrongful death recovery.
On March 26, 1999, Keith filed a motion to vacate all orders entered by Judge Corrigan in the Dezso matter for lack of jurisdiction, claiming that in 1996 all judges of the Cuyahoga County Common Pleas Court had been disqualified from any proceedings involving Keith. On August 20, 1999, Keith filed a motion in Cuyahoga County Probate Court to disqualify Judge Skok, on the grounds that the judge will be called as a witness and has personal knowledge of disputed evidentiary facts. On August 26, 1999, Judge Skok denied the motion but voluntarily recused himself. Judge Swift then was assigned to the case on October 21, 1999.
On September 16, 1999, Keith filed a motion to dismiss and void settlement agreements, again claiming that Judge Corrigan had been disqualified and had no jurisdiction to enter any orders in the Dezso case, added allegations that the wrongful death settlement agreement had been obtained by fraud, and contended that Judge Skok's orders were void because he was improperly assigned to the case by Probate Judge John Donnelly, instead of by the Ohio Supreme Court. On the same date Keith filed a motion for investigation requesting the judge to initiate an investigation into alleged fraud and misconduct by government officials in obtaining the settlement agreement in Dezso's wrongful death case. On November 4, 1999, Keith filed a similar motion, requesting that all proceeds from Dezso's wrongful death settlement be returned and the settlement voided. Keith claimed then, as he does in this appeal, that officials in the Cuyahoga County prosecutor's office conspired to fabricate evidence against him in order to reduce the amount of recovery in Dezso's wrongful death case. Finally, Keith filed a motion for injunctive relief/motion to convey requesting that no distribution of his funds occur until the judge held a hearing on his allegations of fraud and conspiracy, and that he be conveyed to Cuyahoga County for a hearing on these allegations and the distribution of estate funds.
On April 3, 2000, Judge Swift denied Keith's motion for injunctive relief and motion to convey, and on April 4, 2000 he entered an order concerning the distribution of Keith's share of the estate, which reflected an earlier settlement agreement between parties asserting claims. Swift awarded $2,000 to Keith's prison account, $489.15 to the law firm of Hickman Lowder Co. L.P.A., and ruled that all outstanding court costs, including costs related to Keith's numerous motions, be paid from Keith's share of the wrongful death settlement. Judge Swift then awarded the remainder of the funds to Keith's creditors in the following proportions:
18% to the estate of Elizabeth Fuchs, deceased;
8.6% to the City of Cleveland Fire Department;
6.4% to the Cuyahoga County Clerk of Courts;
10% to the Cuyahoga County Prosecutor's Office; and
57% to the law firm of Walter Haverfield, P.L.L.
On April 6, 2000, he denied Keith's motions to vacate Judge Corrigan's orders, his motions for investigation, and his motion to dismiss and void settlement agreements.
Keith's first assignment of error states:
 I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO GIVE CAREFUL CONSIDERATION TO THE APPELLEE'S [sic] MOTION TO BE CONVEYED TO THE PROCEEDINGS.
A prison inmate has no constitutional right to be conveyed to court for civil proceedings, and a judge has discretion to determine whether to grant such a motion, Mancino v. Lakewood (1987), 36 Ohio App.3d 219,221, 523 N.E.2d 332, 335, and we will overturn the ruling only if there has been an abuse of that discretion. Nakoff v. Fairview Gen. Hosp. (1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1, 3.
The Mancino court listed a number of factors relevant to determining whether to grant a motion to convey, including:
 (1) whether the prisoner's request to be present at trial reflects something more than a desire to be temporarily freed from prison; (2) whether he is capable of conducting an intelligent and responsive argument; (3) the cost and convenience of transporting the prisoner from his place of incarceration to the courthouse; (4) any potential danger or security risk the prisoner's presence might pose; (5) the substantiality of the matter at issue; (6) the need for an early resolution of the matter; (7) the possibility and wisdom of delaying the trial until the prisoner is released; (8) the probability of success on the merits; and (9) the prisoner's interest in presenting his testimony in person rather than by deposition. Mancino, 36 Ohio App.3d at 221-22, 523 N.E.2d at 335.
Keith claims that the judge was required to assess these factors on the record, and the failure to do so is reversible error, because it indicates he failed to consider the factors altogether. We disagree. Even if we felt it necessary for a judge to apply the Mancino factors on the record, we could still affirm the decision here because we can determine, without requiring a statement of the basis of that decision, that the judge did not abuse his discretion and that Keith's presence would not have affected the result. Although certain rulings must be accompanied by a statement of their basis in order to allow meaningful appellate review, this requirement applies only to select and extraordinary rulings, such as the grant of a new trial, directed verdict, or judgment notwithstanding the verdict. Civ.R. 50(E), 59(A); Antal v. Olde Worlde Products, Inc. (1984), 9 Ohio St.3d 144, 146,459 N.E.2d 223, 226. We do not believe the Mancino court requires such a statement in all cases where a motion to convey is denied. Although a judge's statement of reasons is helpful, when the record sufficiently shows the basis of the Mancino analysis, we can conduct our review without a specific statement.
Keith argues that he is incarcerated in Grafton, Ohio, and that inmates are transported from that facility to attend court proceedings in Cuyahoga County on a daily basis. He also argues that he presents no security risk, that he is highly likely to prevail on his conspiracy claims, that he was once a licensed attorney and has legal experience, and that if he had been allowed to testify previously the matters in front of the court would have been resolved in 10 minutes * * *. We see no reason to argue the relative ease of conveying Keith to Cuyahoga County, but disagree concerning his chances of prevailing and his ability to affect those chances through personal appearance.
The record reflects that Keith has filed multiple motions asserting widespread conspiracies to prevent the Joseph Dezso estate from recovering in order to harm him personally. In support of his allegations he has misstated the record, asserted the existence of numerous facts without verification, and attached affidavits from several prison inmates who claim to have been paid agents of the conspiracy against him. Keith's conspiracy allegations include unsupported claims that Cuyahoga County prosecutors fabricated the Elizabeth Fuchs case, despite the fact that he was convicted in that case after admitting, inter alia, he took some $30,000 from her bank account for unexplained, unrecorded legal charges, and charged her $150 per hour for driving her on errands.State v. Keith (Oct. 22, 1998), Cuyahoga App. No. 72275, unreported. When Fuchs' conservator (and ultimately the administratorof her estate) moved to compel distribution of funds to her, Keith responded by claiming that he was the executor under Fuchs' will and the conservator's/administrator's action was unauthorized. The judge was not required to convey Keith to a courtroom to discuss these arguments.
Contrary to Keith's assertions, it is unlikely that government officials, aided by private attorneys, would conspire to harm him by preventing Joseph Dezso's estate from recovering a meaningful settlement. Moreover, there is no evidence whatsoever that the $710,000 settlement was unreasonable, or that the subsequent settlement awarding Keith $30,000 was unfair to Keith, especially considering subsequent forgery and uttering convictions with respect to his conduct in the estate. Keith has not shown how his personal appearance would have helped his cause. There was no abuse of discretion in deciding Keith's motions without conveying him for personal appearance, and we overrule Keith's first assignment of error.
The second assignment states:
 II. THE TRIAL COURT JUDGES, JOHN J. DONNELLY, JOHN E. CORRIGAN, FRED V. SKOK AND THOMAS A. SWIFT ERRED AND/OR ABUSED THEIR DISCRETION AND VIOLATED THE APPELLEE'S [sic] DUE PROCESS RIGHTS UNDER THE 14TH AMENDMENT WHEN THEY FAILED TO HOLD HEARINGS ON JURISDICTIONAL ISSUES AND/OR FAILED TO SET ASIDE OR VACATE VOID JUDGMENTS SUA SPONTE AFTER DISQUALIFYING THEMSELVES FOR LACK OF JURISDICTION.
Keith claims, without attaching any record evidence in support, that in January 1996 the entire bench of the Cuyahoga County Court of Common Pleas was disqualified from presiding over any case in which he was involved. Although we have identified a number of cases in which judges voluntarily recused themselves from cases involving Keith, there is no record of the blanket disqualification alleged, and he has not identified evidence to support his allegations. There is no basis for believing that the Ohio Supreme Court at any time disqualified Judge Corrigan from presiding over these proceedings.
Keith next claims that Judge Skok was improperly assigned to the case by Judge Donnelly instead of the Ohio Supreme Court, and that all of Judge Skok's rulings are void as a result. Our review of the record does not reflect the circumstances of Judge Skok's assignment, and Keith has again failed to point to any evidence supporting his claim. We are therefore unwilling to presume that Judge Skok's assignment was improper.
Keith relies on Beer v. Griffith (1978), 54 Ohio St.2d 440, 8 O.O.3d 438, 377 N.E.2d 775, to argue that a disqualified judge has no power to enter any rulings in a case. The Beer court, however, specifically noted that:
 Although a judge would be without power to hear and determine a cause after disqualification, his judgment, however erroneous, before disqualification is not void. Id. at 442, 377 N.E.2d at 776.
Because only the Ohio Supreme Court has power to disqualify a judge, the lack of records showing such disqualification of Judge Corrigan or an irregular appointment of Judge Skok defeats Keith's argument that their judgments are void. Id. at 441, 377 N.E.2d at 776. Moreover, even if Keith is correct in claiming that either judge should have been or could have been disqualified, we would find that his failure to raise the issues in a timely manner constitutes a waiver of any right to challenge their rulings. Although actual disqualification might render judgments void as a violation of subject matter jurisdiction, a party can waive grounds for disqualification and consent to the judge's jurisdiction. See, e.g., Myers v. Garson (1993), 66 Ohio St.3d 610, 614, 614 N.E.2d 742,745 (objection after adverse decision constituted waiver where opportunity existed earlier).
Keith first objected to Judge Corrigan's jurisdiction on March 26, 1999, over eighteen months after his September 11, 1997 ruling approving Dezso's wrongful death settlement, and after Keith had filed and dismissed his appeal of that ruling.[4] Keith did not object to Judge Skok's assignment until his September 16, 1999 motion to dismiss and void settlement agreements. Keith's August 20, 1999 motion to disqualify Judge Skok, which was improperly filed in the Cuyahoga County Probate Court and therefore constituted nothing more than a request for Judge Skok's voluntary recusal, did not allege that the judge was improperly appointed, but that he had personal knowledge of issues and would be a witness in the case. Nevertheless, both motions came long after Judge Skok's denial of Civ.R. 60(B) relief on March 19, 1998, and that ruling was reversed by this court and remanded with instructions to approve the settlement agreement allowing Keith to recover $30,000 from Dezso's estate. Keith joined in the appellants' arguments in that case to gain approval of the settlement.
It appears that Keith's belated efforts to void the settlement agreements arose after his creditors enjoined the distribution of his share. Furthermore, his current attempts to invalidate those agreements run contrary to his actions in entering the distribution agreement, and joining in efforts to ensure its approval. Keith is now suing to void the agreement that he originally sued to enforce. Even if his arguments had merit, Keith's objections came far too late to justify overturning the mere judicial approval of agreements he accepted or entered voluntarily. The second assignment of error is overruled.
Judgment affirmed.
It is ordered that the appellee recover from the appellant its costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Probate Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, P.J., AND PATRICIA ANN BLACKMON, J., CONCUR
[1] State v. Keith (Mar. 13, 1997), Cuyahoga App. No. 69267, unreported.
[2] State v. Keith (Oct. 22, 1998), Cuyahoga App. No. 72275, unreported.
[3] State v. Keith (Aug. 17, 2000), Cuyahoga App. Nos. 76469, 76479, 76610, unreported.
[4] A fact that would raise substantial res judicata issues even if Keith could substantiate his claims.