OPINION
Rochelle Evans is appealing the decision of the Montgomery County Probate Court ordering Evans to return eleven parcels of property, $40,000 in cash, and other assets to Bige B. Teague, Jr.
The record is unclear as to the nature of the relationship between Evans and Teague, however it is apparent that they are not related by blood or marriage. At some point prior to May of 2000, Teague was the victim of an assault which left him physically impaired. On a document entitled "General Power of Attorney," signed on May 15, 2000 and filed in the County Recorder's office on August 30, 2000, Evans was appointed as Teague's "attorney in fact." The document was signed by Teague, but was not properly notarized. Additionally, the document's "granted powers" were initialed by Evans, not Teague.
Evans utilized her power of attorney to quit-claim eleven parcels of property from Teague to herself between August 31, 2000 and September 5, 2000. The deeds were not signed or initialed by Teague. Also around this time period, Evans used her power of attorney to withdraw more than $40,000 from Teague's accounts and transfer various other of Teague's assets to herself.
At the end of August of 2000, Otto R. Dueno, M.D. examined Teague to determine his mental and physical capacity. Based upon Dr. Dueno's evaluation, an application for guardianship was filed on September 8, 2000 by attorney Brent A. Crane, requesting guardianship of Teague's estate. Crane also filed a motion to freeze all assets. The trial court sustained the motion and froze all assets.
Cheryl Hertlein, Teague's daughter, filed an application for appointment of guardian on September 14, 2000, alleging Teague to be incompetent and requesting guardianship of his person.
A hearing was held on the guardianship matters on October 17, 2000. At the conclusion of the hearing, the magistrate invalidated Evans' power of attorney and granted the applications for guardianship. On October 19, 2000, Crane was appointed as guardian of Teague's estate, and Hertlein was appointed as guardian of Teague's person. That same day, Crane filed a complaint against Evans for embezzlement of Teague's assets.
On November 20, 2000, Charles A. Smiley, Jr. filed a notice of appearance on behalf of Evans, however he filed a motion to withdraw on December 29, 2000. The trial court granted the motion to withdraw, as Evans had indicated that she no longer "needed" his legal services.
The hearing on the embezzlement issue was set for January 11, 2001. Immediately prior to the start of the hearing, Daniel J. O'Brien filed a notice of appearance on behalf of Evans and requested a continuance. The trial court granted the continuance and rescheduled the trial for January 17, 2001.
At the hearing before Judge George J. Gounaris, Crane requested that the eleven quit-claimed parcels of property be returned to Teague so that the parcels could be sold and the proceeds used for his care and maintenance. According to Crane, Teague had never given Evans a valid power of attorney, and the transfer of property was not made for Teague's benefit. Additionally, Crane testified that Evans had refused to quit-claim the parcels back to Teague.
Evans was called as a witness by Crane. Upon advice from O'Brien, Evans declined to answer any questions at the hearing and instead invoked her Fifth Amendment right not to testify in response to every question. Evans offered no evidence on her behalf.
At the conclusion of the hearing, the trial court found in favor of Crane. A decision was filed on February 1, 2001 ordering Evans to return the eleven parcels of land, to re-pay $40,000 to Teague, and to return any of Teague's assets which she possessed.
Evans filed a notice of appeal on February 16, 2001. On May 22, 2001 Evans filed a motion to present her appeal pro se. Attached to her motion were several documents with which she wished to supplement the record, including an entry from the Ohio Supreme Court dated February 26, 2001, denying Evans' request for disqualification of Judge Gounaris based upon alleged bias. Additionally, Evans attached a handwritten document, dated February 20, 2001, listing six objections to Judge Gounaris' decision: (1) Crane should not have been appointed as Teague's guardian; (2) the decision was made without a hearing; (3) bias; (4) discrimination; (5) her rights were taken away from her because she was unable to enter her version of the facts; and (6) she had waived her rights (we are unsure of what this means).
On May 24, 2001, Evans filed a second motion to proceed pro se. Attached to the motion were three letters from the Disciplinary Counsel's Office of the Supreme Court of Ohio regarding complaints Evans had filed against O'Brien, Judge Gounaris, and Crane. The letters indicated that the Disciplinary Counsel had investigated the matter and had found that disciplinary action was not warranted.
On June 14, 2001, O'Brien filed a motion for an extension of time in which to file the appellate brief. This Court filed a decision and entry on June 20, 2001 overruling Evans' motion to proceed pro se because it was unclear whether Evans wished to proceed with O'Brien's representation.
O'Brien filed his brief on behalf of Evans on June 22, 2001. On July 20, 2001, Evans filed another motion to proceed pro se, asserting that O'Brien had not been her attorney since January of 2001. On July 23, 2001, Evans filed another motion with this Court, stating that she had fired O'Brien on January 23, 2001 and that she had made a complaint against him with the Dayton Bar Association.
This Court filed a decision and entry on August 6, 2001, granting Evans' motion to proceed pro se. Evans was granted ten days to inform the Court whether she wished to strike O'Brien's appellate brief, and twenty days in which to file a brief of her own. Evans filed her brief with this Court on August 27, 2001. Evans never informed this Court of her wishes regarding O'Brien's brief.
O'Brien's sole assignment of error was that the trial court had abused its discretion in denying Evans' request for a continuance. Because Evans indicated that she had "fired" O'Brien, we will assume that she wishes this Court to disregard his brief. In any event, we would have found this argument to be meritless, as a trial court's decision denying a continuance will not be reversed absent an abuse of discretion. State v.Unger (1981), 67 Ohio St.2d 65, 67-68, 21 O.O.3d 41, 43. The trial court had already granted Evans two continuances since December of 2000. The third continuance was requested so that Evans could subpoena Teague, who had previously been found incompetent, to testify at the hearing. Accordingly, we do not find that the trial court abused its discretion in denying the continuance.
Because Evans' brief filed on August 27, 2001 does not clearly provide any issues for our review, we will address the six points contained in Evans' February 20, 2001 document. Evans first finds error in the trial court's decision appointing Crane as the guardian for Teague. We note that this issue should have been addressed on a direct appeal after the guardianship was established, but no direct appeal was filed. Moreover, it is well-settled law that an appellate court is bound by the record before it and may not consider extraneous facts. Paulin v. Midland MutualLife (1974), 37 Ohio St.2d 109, 62 O.O.2d 231. The record before us lacks any information regarding the appointment of the guardian. Absent such evidence, this Court must presume the regularity and the validity of the judgment of the trial court. Ostrander v. Parker-Fallis Insulation Co. (1972), 29 Ohio St.2d 72, 74, 58 O.O.2d 117, 119. Allegations contained in Evans' motions and briefs are not sufficient to overcome the presumption of regularity in the trial court's proceedings and the judgment entered by the court. Zashin, Rich, Sutula Monastra Co.,L.P.A. v. Offenberg (1993), 90 Ohio App.3d 436. Accordingly, we will presume regularity in the proceedings below and we find no error in the trial court's decision appointing Crane as Teague's guardian.
Evans next argues that it was wrong for the decision to be made without a hearing. We are unsure to which decision Evans is referring. The trial court in this case held a hearing prior to the appointment of the guardians, and a second hearing was held regarding the embezzlement issue. Without further evidence of impropriety, we must also presume regularity in this instance.
Evans also contends that the procedure was fraught with bias and discrimination. If Evans believed that the trial judge was biased or prejudiced toward her at any stage of the proceedings in the trial court, her remedy was the filing of an affidavit of interest, bias, prejudice or disqualification with the clerk of the Ohio Supreme Court. R.C. 2701.03. See, also, Berdyck v. Shinde (1998), 128 Ohio App.3d 68, 81; Jones v.Billingham (1995), 105 Ohio App.3d 8, 11. Only the Chief Justice of the Ohio Supreme Court or his designee has the authority to pass upon the disqualification of a common pleas court judge. Beer v. Griffith (1978),54 Ohio St.2d 440, 441, 8 O.O.3d 438, 439; State v. Dougherty (1994),99 Ohio App.3d 265, 268-269. Thus, a court of appeals is without authority to render a decision as to disqualification or to void a trial court's judgment on the basis of alleged bias. Beer, supra, at 441-442, 8 O.O.3d at 439-440; Dougherty, supra, at 269. In this instance, the Supreme Court addressed these matters for Evans, and we find that we are without jurisdiction to address these issues further.
Evans' final contentions are that she had her rights taken away, she was "not allowed" to enter any facts, and that she "waived" her rights. At the January 17, 2001 hearing, Evans, upon O'Brien's advice, invoked her Fifth Amendment right not to testify. It is important to note the nature of this case: Evans, through a questionable power of attorney from Teague, quit-claimed eleven parcels of property from Teague to herself. Evans also used her power of attorney to transfer assets and other funds worth more than $40,000 from Teague to herself. Although it is unfortunate that Evans was unable to recite her version of the facts, given the circumstances of this case we find that it was sound trial strategy for O'Brien to advise Evans to invoke her Fifth Amendment rights to prevent Evans' testimony from exposing her to criminal liability.
As a final matter, we believe that Evans might also be asserting a general manifest weight of the evidence argument in this matter. A judgment of a trial court will not be reversed on appeal as being against the manifest weight of the evidence if it is supported by some competent, credible evidence going to all of the essential elements of the case. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus, 8 O.O.3d 261, syllabus. The appellate court is directed by the presumption that the findings of the trier of fact are correct. SeasonsCoal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 79. The trier of fact is in the best position to observe witnesses and weigh their credibility.Id.
In evaluating the merits of this assignment of error, it is essential to consider that a power of attorney is a written instrument authorizing the agent to perform specific acts on behalf of the principal. Testa v.Roberts (1988), 44 Ohio App.3d 161, 164; Fischer v. Greater ClevelandRegional Transit Authority (Dec. 19, 1991), Cuyahoga App. No. 59694, unreported. The execution of a power of attorney is controlled by statute. In re Guardianship of Ray (Sept. 16, 1991), Jackson App. No. 657, unreported. Furthermore, in Spitzer v. Jackson (1994),96 Ohio App.3d 313, this Court held that an executrix, who had general power of attorney for her aunt who was ill in a nursing home, had provided an "unsatisfactory" explanation for her expenditures totaling $170,000. We found that it was apparent that the executrix had treated the money as her own and that the assets were recoverable by the estate. Id.
In this case, the hearing provides competent, credible evidence that Evans did embezzle property, funds, and other assets from Teague using her power of attorney. Teague was involved in an altercation which left him physically impaired. Shortly thereafter, a power of attorney was filed in the County Recorder's Office which had been allegedly signed by Teague, but which lacked the proper notarization. Evans used this power of attorney to quit-claim eleven parcels of property from Teague to herself. She also withdrew more than $40,000 worth of assets from Teague's various accounts. Once transferred to Evans, the assets were not used to help in the care and maintenance of Teague.
After a review of the record, we find that competent, credible evidence exists to support the trial court's conclusion that Evans did embezzle Teague's property and funds, and thus the funds were recoverable by the estate.
Accordingly, we overrule Evans' assignments of error.
The judgment of the trial court is affirmed.
BROGAN, J., GRADY, J., and YOUNG, J. concur.