The STATE of Ohio, Appellee,

v.

WEBB, Appellant.

[Cite as *State v. Webb*, 173 Ohio App.3d 547, 2007-Ohio-5670.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21814.

Decided Oct. 19, 2007.

Mathias H. Heck Jr., Montgomery County, Prosecuting Attorney, and Mark J. Keller, Assistant Prosecuting Attorney, for appellee.

Randall L. Webb, pro se.

WOLFF, Presiding Judge.

{¶ 1} Randall L. Webb appeals from a judgment of the Montgomery County Court of Common Pleas, which denied his request to withdraw a plea of no contest.

{¶ 2} The state alleged that Webb used his position as an employee at a foreclosure-prevention company to obtain funds from his victims under the guise that he would assist them in avoiding foreclosure. In fact, the allegations continued, Webb kept the money himself, and the victims lost their homes in foreclosure.

{¶ 3} On May 20, 2005, Webb was indicted on five counts of theft from Virginia Gibson; the thefts allegedly occurred between July 1, 2003, and September 3, 2004. Each of these counts alleged that Webb had knowingly obtained or exerted control over Gibson's property beyond the scope of her express or implied consent. On July 15, 2005, Webb was indicted on a similar count of theft from Eric Arvai. On January 10, 2006, the state sought to join these cases for trial because of the similarity of the offenses. The trial court granted the motion, and trial was scheduled for March 30, 2006.

{¶ 4} The trial date was continued several times due to requests for continuances, Webb's "motion to withdraw counsel," and other motions. On June 21, 2006, Webb waived his right to counsel. He subsequently filed many more motions seeking to delay the start of trial. On August 7, 2006, Webb entered no-contest pleas to all of the charges. On August 28, 2006, Webb filed a motion to withdraw his no-contest plea. The trial court overruled the motion. The court sentenced Webb to one year of imprisonment on each count of theft. It ordered that the sentences in the Gibson case be served concurrently but consecutively with the sentence in the Arvai case.

{¶ 5} Webb raises seven assignments of error on appeal.

{¶ 6} "I. [The] trial court erred when it overruled defendant's motion to withdraw his no contest plea, prior to sentencing without conducting an abuse of discretion [sic]."

{¶ 7} Webb claims that he "set forth the best reason that can be asserted for withdrawing his plea, * * * that he was not guilty and that he had obtained 'several reports and documentation' after the plea hearing, which demonstrate [his] innocence."

{¶ 8} Webb's motion to withdraw his plea did not elaborate on his claim that he had received "reports and documentation" after the plea hearing that demonstrated his innocence. They were not attached to the motion, and the nature of the alleged "reports" is unclear. Likewise, when he appeared before the court, Webb did not provide any specific information about the evidence he claimed to have uncovered. He said he "had a clearer perspective * * * of what went into the whole thing involving the actual company" that he had worked for and that the "documentation," which was not produced, "further proves what [he] said all along, that [he] was not guilty."

{¶ 9} A defendant's motion to withdraw a guilty plea, made before sentencing, should be freely and liberally granted, provided the movant demonstrates a reasonable and legitimate basis for the withdrawal. *State v. Xie* (1992), 62 Ohio St.3d 521, 527, 584 N.E.2d 715. The trial court reasonably concluded that Webb's bare assertion that he had uncovered new information failed to make this threshold showing. Thus, the court did not err in denying Webb's motion to withdraw his plea.

{¶ 10} The first assignment of error is overruled.

{¶ 11} "II. [The] trial court erred when it overruled defendant's motion to separate trial of indictments creating prejudice in appellant's ability to obtain a fair trial."

{¶ 12} Webb claims that he was prejudiced by the trial court's decision to allow the Gibson and Arvai thefts to be tried together.

{¶ 13} The state offered the following argument in favor of joinder:

{¶ 14} "In both cases [Webb] met with individuals whose homes were in the early stage of foreclosure. He convinced both victims that he could help them avoid foreclosure by a system of payments. In both cases he collected the money but the money was never paid towards the mortgages. Both victims lost a significant amount of money and ultimately lost their homes due to [Webb's] conduct.

{¶ 15} " * * *

{¶ 16} "[T]he unique plan and scheme used by [Webb] will make each relevant to [the] other to show [Webb's] identity, motive, opportunity, intent, preparation, plan, knowledge and absence of mistake or accident."

{¶ 17} Crim.R. 8(A) provides that "[t]wo or more offenses may be charged in the same indictment * * * if the offenses charged * * * are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Joinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to the witnesses. *State v. Torres* (1981), 66 Ohio St.2d 340, 343, 20 O.O.3d 313, 421 N.E.2d 1288. An accused may move for separate trials, but he has the burden to affirmatively demonstrate that his right to a fair trial will be prejudiced by the joinder. Crim.R. 14; *State v. Lott* (1990), 51 Ohio St.3d 160, 555 N.E.2d 293. For an appellate court to reverse a trial court's ruling denying severance, the defendant must demonstrate that the trial court abused its discretion. Id.

{¶ 18} In our view, the similarity in the offenses alleged involving Gibson and Arvai justified the joinder of the offenses at trial under the criteria set forth in Crim.R. 8. Webb's only argument in opposition to the joinder was a very general claim that he would be prejudiced thereby. He did not present any factual basis upon which to conclude that there would be prejudice. Thus, he did not affirmatively demonstrate that his right to a fair trial was compromised.

{¶ 19} The second assignment of error is overruled.

{¶ 20} "III. [The] trial court erred through overruling motion to disqualify and proceeding with sentencing hearing violating defendant's right to a fair trial guaranteed by the Due Process Clause of the Fifth Amendment of the United States Constitution."

{¶ 21} Webb claims that his due process rights were violated because two judges who presided over the case in the common pleas court were biased against him.

{¶ 22} We addressed the issue of appeals based on judicial bias in *State v. Frye* (Dec. 12, 1997), Clark App. No. 96–CA–118, 1997 WL 762828. We concluded:

{¶ 23} "Section 5(C), Article IV of the Ohio Constitution grants the Chief Justice or his designee exclusive jurisdiction to hear a claim that a common pleas judge is biased or prejudiced. The Supreme Court of Ohio has held that '[s]ince only the Chief Justice or his designee may hear disqualification matters, the Court of Appeals [is] without authority to pass upon disqualification or to void the judgment of the trial court upon that basis.' *Beer v. Griffith* (1978), 54 Ohio St.2d 440, 441–42 [8 O.O.3d 438], 377 N.E.2d 775; see also *State v. Dougherty* (1994), 99 Ohio App.3d 265, 268–69, 650 N.E.2d 495 (finding no jurisdiction on this question in a direct appeal from criminal conviction and sentence). Following this principle, this court has concluded that R.C. 2701.03 provides the exclusive means by which a litigant may claim that a common pleas judge is biased and prejudiced. *Jones v. Billingham* (1995), 105 Ohio App.3d 8, 11, 663 N.E.2d 657. Thus, this court lacks the jurisdiction to find that the trial court committed the error which appellant assigns."

{¶ 24} For the reasons set forth in *Frye*, the third assignment of error is overruled.

{¶ 25} "IV. [The] trial court erred in rendering an order of restitution which was not consistent with the evidence and claim, further it was an abuse of discretion for not conducting a hearing prior to restitution being ordered."

{¶ 26} Webb claims that the restitution awards in both cases are unsupported by the indictments or the evidence presented.

{¶ 27} The trial court ordered Webb to pay $8,390 in restitution in the Gibson case and $14,820 in the Arvai case. He claims that neither of these amounts was supported by the record. The state responds that the court was not required to hold a hearing on restitution if the amount was not disputed, and it asserts that Webb did not dispute the amount until "approximately a month and a half after entering his plea." The state also asserts that the amount of restitution was supported by the record.

{¶ 28} At a hearing on June 15, 2006, at which plea negotiations were discussed, Webb inquired about restitution. The prosecutor responded:

{¶ 29} "I would have to have a calculator and add it up at this point. I know I've done it before. I don't have the figures in front of me.

{¶ 30} "As part of the discovery, we have receipts from the Gibsons, including $932, $200, $800, $50, $640, $650, $100, $200, $620. That would be with respect to one victim. I believe the other victim is in that same range."

{¶ 31} The court then stated:

{¶ 32} "So, it would be about 42—, 4500 each or something in that range."

{¶ 33} The presentence investigation ("PSI") stated that Gibson had given Webb $8,390 in cash over 14 months. No documentation of this amount was provided. With respect to Arvai, it stated that Arvai had given Webb an initial payment of $1,817 and that Arvai's wife had produced one check payable to Webb for $250. The prosecutor also stated in the PSI that Arvai had given Webb at least $14,820. Again, no documentation of this amount was provided. The indictment specified that each count involved more than $500. This is the full extent of the record with respect to restitution. Obviously, the values conflict to some extent.

{¶ 34} We agree with Webb that the evidence presented was insufficient to support the restitution awards. An order of restitution must be supported by competent, credible evidence in the record from which the court can discern the amount of the restitution to a reasonable degree of certainty. *State v. Gears* (1999), 135 Ohio App.3d 297, 300, 733 N.E.2d 683; *State v. Collins,* Montgomery App. Nos. 21510, 21689, 2007-Ohio-5365, 2007 WL 2897808. With respect to each of the victims, there is no evidence to substantiate the court's restitution orders "to a reasonable degree of certainty." Thus, we will remand for a hearing on the issue of restitution, at which additional evidence can be presented.

{¶ 35} The fourth assignment of error is sustained.

{¶ 36} "V. [The] trial court erred when intrusion into attorney-client relationship by contacting attorney which appellant was seeking to replace current trial counsel which violated appellant's Sixth Amendment rights."

{¶ 37} Webb claims that the court violated his attorney-client privilege by communicating with an attorney that he was trying to hire.

{¶ 38} For several weeks before his trial, Webb claimed that he was dissatisfied with his attorney and that he was attempting to hire a new one. He obtained four continuances during this time. Webb claimed that he was trying to hire attorney George Katchmer. At a hearing on June 19, 2006, the court stated:

{¶ 39} "COURT: I think that either the State called Mr. Katchmer or our bailiff did.

{¶ 40} " * * *

{¶ 41} "COURT: They said that they were not going to represent you. Is that right, Ms. Dodd [the prosecutor]?

{¶ 42} "MS. DODD: Yes, your Honor. I spoke to Mr. Katchmer and his partner was also on speakerphone at the time and they advised they had not been retained. And had they been retained, they would have immediately filed a notice of appearance and they haven't done so. And as such—and they had no intention of doing so."

{¶ 43} Based on Katchmer's representation, conveyed to the court through the prosecutor, the court indicated that the matter would proceed to trial the following week. The court also ordered someone from Rion and Rion (Webb's previous counsel) to accompany him "for whatever purpose," although it was fairly clear at that point that Webb intended to represent himself.

{¶ 44} In a criminal matter that is about to go to trial, the existence of the attorney-client relationship would not be privileged information. Although the court's order that the Rions should continue to be present at the proceedings while allowing Webb to represent himself was unorthodox, it did not violate either Webb's right to counsel or the attorney-client privilege.

{¶ 45} Webb also argues that the trial court interfered with his efforts to hire new counsel by "not grant[ing] the motion to allow [him] to obtain new counsel." However, Webb was not represented by appointed counsel. Thus, he did not need the court's permission to hire a new attorney. The record indicates that he simply did not follow through on doing so.

{¶ 46} The fifth assignment of error is overruled.

{¶ 47} "VI. The trial court erred when it sentenced the appellant to a more-than-the-minimum and maximum prison term contrary to the rule of lenity.

{¶ 48} "VII. The trial court erred when it sentenced the appellant to a more-than-the-minimum and maximum prison term in violation of appellant's right to due process."

{¶ 49} In his sixth and seventh assignments of error, Webb argues that he should have received the minimum sentence for his offenses. He claims that his sentences violated the rule of lenity and his right to due process.

{¶ 50} The rule of lenity is a principle of statutory construction that prohibits a court from interpreting a criminal statute so as to increase the penalty it imposes on a defendant when the intended scope of the statute is ambiguous. *Moskal v. United States* (1990), 498 U.S. 103, 107–108, 111 S.Ct. 461, 112 L.Ed.2d 449. It applies only where there is an ambiguity in a statute or a conflict between multiple statutes. See *United States v. Lanier* (1997), 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432. Webb has not pointed to any ambiguity in

the statutes under which he was sentenced. Therefore, the rule of lenity is not applicable to the present case.

{¶ 51} Webb also claims that under *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, trial courts are prohibited from imposing any sentence other than the minimum sentence because any greater sentence would require findings by the jury or admissions by the accused. Webb misstates the holding in *Foster.* As we have pointed out many times, the Supreme Court severed the provisions that it found to be unconstitutional in *Foster,* including R.C. 2929.14(B), which related to nonminimum sentences, R.C. 2929.14(E)(4), which related to consecutive sentences, and R.C. 2929.14(C), which related to maximum sentences. Id. at ¶ 97, 99. In light of this holding, trial courts now have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or to give their reasons for imposing nonminimum or consecutive sentences on an offender. Id. at ¶ 100; *State v. Mathis,* 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 26. The Supreme Court expressly rejected the suggestion that the remedy for sentences imposed under the unconstitutional sentencing scheme was the imposition of a mandatory minimum sentence. *Foster* at ¶ 100; *State v. Payne,* 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 25. The trial court sentenced Webb to the maximum sentence on each count but ordered that five of the six counts run concurrently. The trial court did not abuse its discretion in imposing this sentence.

{¶ 52} The sixth and seventh assignments of error are overruled.

{¶ 53} The judgment of the trial court is reversed with respect to restitution, and the cause is remanded for a hearing on that issue. In all other respects, the judgment of the trial court is affirmed.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

BROGAN and FAIN, JJ., concur.