OPINION
{¶ 1} Defendant-Appellant, Geisken Enterprises, Ltd., appeals a Putnam County Common Pleas Court decision finding that Plaintiff-Appellees, Alan and Melinda Kaufman, acquired title to a tract of land by adverse possession. Geisken argues that a prior quiet-title action was res judicata as to the Kaufmans' adverse possession claim, that the Kaufmans failed to establish the elements of adverse possession by clear and convincing evidence and that the trial court's determination is against the manifest weight of the evidence. Because the Kaufmans' claim to the property was apparent and they were not joined as parties in the prior quiet-title action, that action does not bar the present adverse possession claim. Furthermore, since the record contains competent, credible evidence going to the essential elements of the Kaufmans' adverse possession claim, we find that the trial court did not abuse its discretion and that its determination is not against the manifest weight of the evidence. Therefore, we affirm the trial court's judgment.
 {¶ 2} Facts and procedural circumstances relevant to issues raised on appeal are as follows: In 1972, Rosalie and Charles Borer acquired title to a residential property comprised of inlots number nineteen, twenty, and twenty-one in the Village of Glandorf, Ohio from the Heckman family. The Borer family resided on the premises until Alan and Melinda Kaufman purchased the property in 1993. Since 1957, Shirley and Charles Geisken have owned and lived in a residence immediately south of the property owned by the Borers and then Kaufmans.
 {¶ 3} In 1973, Shirley Geisken acquired title to a tract of farmland comprised of several undeveloped lots from what was then-referred to as Ellerbrock's Addition. Although the tract abutted the eastern end of the Geiskens' residential property, the tract was separated from the eastern end of the Kaufman property by what was previously designated as lot number twenty of Ellerbrock's Addition. The last record owner of lot number twenty was John W. Ellerbrock. The lot was not included in the 1973 transfer to Shirley Geisken or subsequent renumbering of surrounding lots and, therefore, will hereinafter be referred to as "unnumbered lot twenty."
 {¶ 4} Unnumbered lot twenty extends east and west for a distance of 60 feet, and north and south for a distance of 120 feet. The lot is aligned with the eastern property line of Kaufmans' lot number nineteen, which is of identical layout and dimensions. A row of pine and deciduous trees planted by the Heckmans and Borers transects unnumbered lot twenty from north to south roughly twenty-five feet from the eastern property line of lot nineteen.
 {¶ 5} From 1973 until 1994, the Geiskens or their tenants farmed and gardened on the lots Shirley Geisken had acquired in 1973. These activities extended into unnumbered lot twenty east of the tree line. That portion of unnumbered lot twenty lying west of and up to the cultivated land was regularly maintained lawn, and, as indicated by all parties, appeared to be contiguous to the property owned by the Borers and then Kaufmans. However, conflicting evidence was submitted as to the parties' respective use of this portion of unnumbered lot twenty since 1972.
 {¶ 6} In 1997, the Geiskens, in preparation for the residential development of the tract purchased in 1973, had the land surveyed. At that time, the Geiskens discovered that they did not have record title to unnumbered lot twenty. In October 1997, they initiated a quiet title action against Jane or John Doe (fictitious names of purportedly unknown parties with a potential interest), Gerhart Kleman and John W. Ellerbrock, their heirs, successors and assigns as record title holders, and the Village of Glandorf, claiming that they had acquired title to unnumbered lot twenty by adverse possession. The named defendants and unknown parties were served by publication, pursuant to Civ.R. 4.4, in the Putnam County Sentinel. On April 21, 1998, the trial court quieted title to unnumbered lot twenty, forever estopping any unknown parties from making a claim for right, title, or interest in the property. Title to the property was transferred to Geisken Enterprises, Ltd.
 {¶ 7} After becoming aware that that the physical layout of Geisken's subdivision would encompass unnumbered lot twenty, thereby encroaching roughly thirty feet into property they had utilized and believed to be theirs, the Kaufmans filed suit claiming to have acquired title to the western portion of unnumbered lot twenty by adverse possession. Geisken answered the complaint and subsequently moved for summary judgment, arguing that the claims were "barred by the doctrine of res judicata based on the orders of [the trial court] in Case No. 97-CVH-234, titled Robert Shirley Geisken, et al. vs. Jane or JohnDoe, et al." Geisken asserted that the Kaufmans were unknown parties in interest properly named as defendants through the use of the fictitious description pursuant to Civ.R. 15(D), that they were properly served with notice pursuant to Civ.R. 4.4, and that they simply failed to avail themselves of the opportunity to present those claims in the prior proceedings. The trial court found that the Kaufmans' claim would have been known to the Geisken's in 1997, and denied summary judgment. The court also held that Civ.R. 15(D) does not permit a fictitious name to be substituted for a known party with a potential claim to the property and would not satisfy privity requirements for the invocation of res judicata against such party.
 {¶ 8} After denying Geisken's motion for summary judgment, Judge Basinger recused himself from the case at the request of Geisken's counsel because of a social relationship with the Geisken family. Judge J. David Webb was assigned to preside in the case, he subsequently affirmed the denial of summary judgment, and the matter proceeded to trial.
 {¶ 9} On May 7, 2002, the trial court concluded that the Kaufmans had established, by clear and convincing evidence, that they and their predecessors in interest had adversely, openly, notoriously, and exclusively possessed the western portion of unnumbered lot twenty, lying west of a line parallel with the west boundary of unnumbered lot twenty and ten feet east of the easternmost point of the southernmost deciduous tree, for a continuous period exceeding twenty-one years. From this decision Geisken appeals, presenting five assignments of error for our review. Because issues presented within the fourth and fifth assignments of error are sufficiently interrelated, we will review those assignments together.
Assignment of Error Number One
 {¶ 10} "The Trial Court Erred As A Matter Of Law In Denying Defendants' Motion For Summary Judgment Based On The Issue Of Res Judicata."
 {¶ 11} Within the first assignment, Geisken argues that the Kaufmans were properly included in the previous quiet title action under the fictitious party designation and appropriately served by publication. Geisken maintains that any claims the Kaufmans may have had were extinguished by the April 21, 1998 judgment and are now barred under principles of res judicata.
 {¶ 12} Civ.R. 15(D) permits the use of a fictitious name where the name of party is unknown: "When the plaintiff does not know the name of a defendant, that defendant may be designated in a pleading or proceeding by any name and description. When the name is discovered, the pleading or proceeding must be amended accordingly. The plaintiff, in such case, mustaver in the complaint the fact that he could not discover the name. The summons must contain the words `name unknown,' and the copy thereof must be served personally upon the defendant."[1] Civ.R. 4.4(A) sets forth the procedural requirements for obtaining service by publication as follows: "(1) Except in an action governed by division (A)(2) of this rule, if the residence of a defendant is unknown, service shall be made by publication in actions where such service is authorized by law. Before service by publication can be made, an affidavit of a party or his counsel shall be filed with the court. The affidavit shall aver thatservice of summons cannot be made because the residence of the defendantis unknown to the affiant, all of the efforts made on behalf of the partyto ascertain the residence of the defendant, and that the residence ofthe defendant cannot be ascertained with reasonable diligence."[2]
"From the plain and unambiguous language of Civ.R. 4.4(A) it is axiomatic that a plaintiff must exercise reasonable diligence in his attempt to locate a defendant before he is entitled to service by publication."[3]
 {¶ 13} The Ohio Supreme Court has held that the "main legal thread" running throughout determinations as to the applicability of res judicata is the necessity of a fair opportunity to fully litigate and to be "heard" in the due process sense.[4] "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[5] "[P]ersonal service of written notice is always adequate in any proceeding. To determine whether less certain notice is appropriate requires balancing the respective interests of the state and the persons subject to the deprivation. This balancing is case specific and not subject to any formula. Notice that is a `mere gesture' is insufficient; it must be `such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.'"[6] Notice by publication may be sufficient as to those persons whose addresses are unknown or whose interests were unknown, future, or conjectural.[7]
 {¶ 14} The level of investigation required under standards of reasonable diligence to ascertain a person's interest or address is dependent upon the character of the proceedings and the nature of the interests involved.[8] However, the indulgence of a legal fiction and notice by publication for a person with a proprietary interest in a proceeding are inappropriate when that person's interest and address are known or easily ascertainable and the cost of notice is little more than that of a first-class stamp.[9] In such cases, notice by mail is a constitutional prerequisite to a proceeding that adversely affects that person's interest.[10]
 {¶ 15} Although Geisken does not appear to challenge the trial court's factual determinations on appeal, averring only that the trial court erred as a matter of law, we nevertheless note that appellate courts must adhere to "every reasonable presumption in favor of the lower court's judgment and finding of facts."[11] Furthermore, pursuant to Civ.R. 56(C), summary judgment is appropriate only when "(1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing the evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party."[12]
 {¶ 16} Notably, the essential elements of the adverse possession claim underlying the Geiskens' quiet title action are identical to the elements of the Kaufmans' present claim, requiring that they have conducted themselves and treated the property as their own for a period of twenty-one years. However, Thomas Geisken, son of Robert and Shirley Geisken and an officer of Geisken Enterprises, Ltd., testified that casual observation would reflect that the disputed tract was contiguous to and owned by the Kaufmans. Shirley Geisken agreed with this statement. Thomas and Shirley further conceded that their family knew that the Kaufmans and Borers had used and maintained the property over the preceding years at the time they filed the quiet title action. Such activity would have, at a minimum, undermined the Geiskens' claim to have adversely possessed the property and was sufficiently notorious to put a person of ordinary prudence on notice that there may be an adverse claim to the tract. Reasonable diligence, under the character of the quiet title proceedings and nature of the interests involved therein, would require that the Kaufmans be joined in the action and notified accordingly. Therefore, we find that the trial court did not err in concluding that the use of a fictitious name and notice by publication deprived the Kaufmans of a fair opportunity to fully litigate their claim and would not satisfy privity requirements for the invocation of res judicata.
 {¶ 17} Accordingly, Geisken's first assignment of error is overruled.
Assignment of Error Number Two
 {¶ 18} "The Trial Court (via Judge Randall J. Basinger) Abused Its Discretion In Ruling Upon The Motion For Summary Judgment Then Subsequently Disqualifying Himself From Participating In Any Further Proceedings In Order To Avoid An Appearance Of Impropriety."
 {¶ 19} After denying Geisken's motion for summary judgment as to the res judicata effect of the 1997 quiet title action, Judge Basinger recused himself from the case at the request of Geisken's counsel because of a social relationship with the Geisken family. Geisken argues that Judge Basinger abused his discretion by failing to recuse himself prior to considering the motion.
 {¶ 20} This Court has no jurisdiction to vacate Judge Basinger's ruling or the final judgment on a claim of judicial bias. In Beer v.Griffith, the Ohio Supreme Court explicitly and unequivocally stated that, since only the Chief Justice or his designee may hear disqualification matters, an appellate court is without authority to pass upon disqualification or to void a trial court judgment on the basis of judicial bias.[13] Though a judge would be without power to hear and determine a cause after disqualification, his judgment is not void, however erroneous it might be.[14] Furthermore, Geisken fails to delineate and the record does not support that any prejudice resulted from the denial. Judge Webb subsequently affirmed the denial of summary judgment and, as discussed in the first assignment of error, the failure to join or notify the Kaufmans of the prior quiet title action prevented the resulting decision from operating to bar the instant action under principles of res judicata. Accordingly, Geisken's second assignment of error is overruled.
Assignment of Error Number Three
 {¶ 21} "The Trial Court (via Judge J. David Webb) Abused Its Discretion In Denying Appellant's Motion For Relief From Judgment Pursuant To Civ.R. 60(b)(5) Without A Hearing."
 {¶ 22} On May 7, 2002, judgment was entered finding that the Kaufmans had obtained title to the western portion of unnumbered lot twenty by adverse possession. Later that month, the Geiskens claim that they discovered Judge Webb's wife had common ancestors with the Kaufman family. Geisken subsequently moved for relief from judgment pursuant to Civ.R. 60(B)(5), contending that the Judge Webb's undefined relationship to the Kaufmans was unfairly prejudicial. On June 20, 2002, Judge Webb denied the motion, indicating that "the Kaufman name in Putnam County is as common as the name Smith in most other counties," that he did not know and had not met Alan Kaufman prior to trial, and that his wife was distantly related to the Kaufmans by consanguinity of the ninth degree.
 {¶ 23} While this Court has no jurisdiction to vacate the trial court's judgment on the basis that Judge Webb was biased or lacked impartiality on a direct appeal, a judge's participation in a case that gives rise to the appearance of impropriety and possible bias could constitute grounds for relief under Civ.R. 60(B)(5).[15] However, it is well-settled that a decision overruling a Civ.R. 60(B) motion for relief from a final judgment is a final appealable order.[16] Therefore, it follows that the grant or denial of a motion for relief from final judgment pursuant to Civ.R. 60(B) must be appealed separately, providing that an aggrieved party file timely notice of appeal to vest the reviewing court with jurisdiction to hear the appeal.[17] While Geisken filed a timely notice of appeal from the May 7, 2002 judgment, no appeal was taken from the June 20, 2002 denial of the Civ.R. 60(B) motion. Accordingly, because Geisken's third assignment of error is not properly before this Court, it is hereby overruled.
Assignment of Error Number Four
 {¶ 24} "The Trial Court Abused Its Discretion And Erred As A Matter Of Law By Finding That The Kaufmans Had Held The Disputed Property In An Exclusive, Open, Notorious, Continuous, And Adverse Possession For A Period In Excess Of Twenty-one (21) Years."
Assignment of Error Number Five
 {¶ 25} "The Trial Court's Finding That The Plaintiffs Have Established By Clear And Convincing Evidence That Plaintiffs And Their Predecessors In Interest Have For More Than Twenty-one (21) Years Exclusively, Openly, Notoriously, Continuously, And Adversely Possessed The Western Portion Of Unnumbered Lot Twenty (20) Is Against The Manifest Weight Of The Evidence And The Record Contains No Competent, Credible Evidence To Support The Trial Court's Decision."
 {¶ 26} Within the fourth and fifth assignments of error, Geisken argues, generally, that circumstances of this case do not satisfy the essential elements of adverse possession and that the trial court's determination is against the manifest weight of the evidence. As discussed below, Geisken specifically attacks the court's finding as to the exclusivity of the Kaufmans' use of the property.
 Burden of Proof {¶ 27} "[T]o acquire title by adverse possession, a party must prove, by clear and convincing evidence, exclusive possession and open, notorious, continuous, and adverse use for a period of twenty-one years."[18] "Clear and convincing evidence is that proof which establishes in the minds of the trier of fact a firm conviction as to the allegations sought to be proved."[19] An appellate court will uphold a trial court's judgment if there is "some competent, credible evidence * * * [to support] all the essential elements of the case."[20] Upon review of the record, we find the trial court's judgment to be supported by sufficient competent, credible evidence as to all essential elements of the Kaufmans' claim.
 Hostility and Adversity {¶ 28} Turning to the elements of hostility and adversity, the Ohio Supreme Court has stated that any use of the land inconsistent with the rights of the titleholder is adverse or hostile.[21] Adverse use of land has also been described as nonpermissive use of land.[22] To make possession adverse, "there must have been an intention on the part of the person in possession to claim title, so manifested by his declarations or his acts, that a failure of the owner to prosecute within the time limited, raises a presumption of an extinguishment or a surrender of his claim."[23]
 {¶ 29} "We note at this point that any mistake by the property owners regarding the true property lines is not material to a demonstration of adverse possession. The doctrine of adverse possession applies to persons who honestly enter and hold land in the belief that it is their own, as well as to persons who knowingly appropriate the land of another for the purpose of acquiring title. Moreover, it is not necessary that the title owner have actual knowledge of adverse use since the owner is charged with such knowledge when one enters into open and notorious possession of the land under a claim of right."[24]
 {¶ 30} We find that the declarations and conduct of the Borers and Kaufmans presents sufficient evidence of an intention to claim title. Both families testified that they continuously maintained and believed that they owned the disputed tract of land. Alan Kaufman testified that when he purchased his home in 1996, Charles Borer explained that the eastern property line coincided with an area of grass that extended to the field beyond a row of trees that the Borers and their predecessors in interest, the Heckmans, had planted over the past decades. Michael Borer and Michele Hermiller, Borers' son and daughter, testified that the family always perceived and believed that their yard extended to the field, beyond the tree line, since their family purchased the property in 1972. Neither the Borers nor Kaufmans had requested nor been given permission to occupy the land.
 Open And Notorious Possession {¶ 31} Regarding the elements of "open and notorious" possession, we have previously held that: "To be open, the use of the disputed property must be without attempted concealment. * * * To be notorious, a use must be known to some who might reasonably be expected to communicate their knowledge to the owner * * * [or] so patent that the true owner of the property could not be deceived as to the property's use."[25]
"[T]he adverse claim of ownership must be evidenced by conduct sufficient to put a person of ordinary prudence on notice of the fact that the land in question is held by the claimant as his own. The possession must be visible and open to the common observer of the property so that the owner or his agent, on visiting the premises, might readily see that the owner's rights are being invaded. As a natural corollary, the claimant's use must be generally known by the public as well.[26] "A claimant is not required to make express declarations of adverse intent during the proscribed period."[27]
 {¶ 32} "A demonstration of adverse possession must be judged on a case-by-case basis. Thus, in order to determine whether adverse possession should have been granted in this case depends on the evidence presented at trial regarding the use and treatment of the land."[28]
Avoidance of a bright line rule is necessary because a use which notifies an owner of a certain character in one locale that a party is asserting an adverse claim to his land, may not be sufficient use so as to notify an owner of property of a different character in a different locale.[29]
 {¶ 33} Although lawn maintenance is not alone sufficiently open and notorious to establish adverse possession, such activity is "relevant evidence of open and notorious use, and when combined with other activities under the proper circumstances it may help to establish an adverse possession."[30] In Grace v. Koch, the Ohio Supreme Court found that mowing grass, parking cars, recreational use, and placement of firewood, oil drums, and a swing set on a strip of land presented a close case.[31] The Court concluded, however, that record did not contain clear and convincing evidence that the Graces were on notice that their dominions had been invaded in 1971 because the Kochs requested permission before mowing the strip and conceded that they knew the strip was not theirs and would not have used it without the Graces' permission.[32]
 {¶ 34} This is not a case of an ambiguous strip of land between two residential properties or permissive use of a neighbor's land. The disputed strip of land is located directly behind the Kaufmans' home, the western edge of the strip coinciding with their eastern property line and the eastern edge of strip, which previously abutted a cultivated field, remaining at least ten feet past a line of trees planted by the Borers and Heckmans. The evidence supports that since 1972, the Borers and Kaufmans have continuously maintained the disputed strip and adjoining property as a contiguous tract of land without permission of Gerhart Kleman or John W. Ellerbrock, their heirs, successors, or assigns, as previous record title owners, or the Geiskens, who maintain that they properly acquired title by adverse possession. The families used the strip for recreation, planted and pruned trees, cultivated asparagus, parked cars, ran a go-cart, stored firewood, piled debris, placed burn barrels on the property, and kept the property generally attractive according to neighborhood standards in such use as would be made of that land by an owner.[33]
 {¶ 35} The Borers' son, Michael Borer, testified that he had mowed approximately ten feet beyond the tree line since his family purchased the property in 1972. He indicated that the family had used the lot as a go-cart track and that the Geiskens' activity in the disputed area was generally limited to the families' children playing together. Michele Hermiller, the Borers' daughter, testified that her father always mowed up to the cultivated field beyond the tree line whenever he mowed their lawn, that her cousin was recruited to mow the area when they were gone, and that she never saw the Geiskens planting anything in or maintaining the disputed tract. Hermiller further testified that the family had planted an asparagus patch and maintained a brush pile near the tree line, where they raked leaves and burned debris on a regular basis. The Kaufmans testified that their family had camped, mowed, raked, maintained a burn barrel and wood and brush piles, paid a tree maintenance service $700 to trim the trees, and used the area for recreation since they purchased the property in 1993, informing others that they owned the disputed tract.
 {¶ 36} Joe Fortman, a neighbor north of the property, confirmed that the Borers and Kaufmans had continuously maintained the lot during the sixteen years he had lived next door, constantly mowing, picking up branches, raking leaves, and cleaning the yard. Fortman also mowed the property for the Borers on occasion and testified that Charles Borer had instructed him to mow at least ten feet beyond the tree line. Fortman testified that he had never seen the Geiskens do anything to maintain the property or heard any statements indicating that the property was theirs.
 {¶ 37} Although Thomas and Shirley Geisken initially denied that the Borers had ever used the property, they subsequently admitted that they were aware that Borer and Heckman had planted trees in the disputed tract in the parallel line adjacent to the field and that the Borers and Kaufmans had mowed and maintained the property beyond the tree line. As mentioned previously, Thomas and Shirley Geisken agreed that casual observation would reflect that the disputed tract was contiguous to and owned by the Kaufmans. Alan Kaufman testified that when he commented to Robert Geisken that he was going to have his trees trimmed, Geisken made no claim of ownership, stating only that: "Well, when they come over, let me know because I'm going to have some in my own yard trimmed."[34]
 {¶ 38} Considering the nature of the tract and surrounding area, we find the Borer and Kaufman families' conduct to be sufficient to put the Geiskens on notice that they held the land in question as their own and that any rights thereto were being invaded.
 Continuous-Exclusive Use {¶ 39} It is well-established that the "[u]se of the property does not have to be exclusive of all individuals. Rather, it must be exclusive of the true owner entering onto the land and asserting his right to possession. It must also be exclusive of third persons entering the land under their own claim of title, or claiming to have permission to be on the premises from the true title holder. If the title holder enters onto the land without asserting, by word or act, any right of ownership or possession, his presence on the land does not amount to an actual possession, and the possession may properly be attributed to the party who is on the land exercising or claiming exclusive control thereof. It is not necessary that all persons be excluded from entering upon and using the premises."[35]
 {¶ 40} Geisken avers that "the trial court failed to consider Geisken's use of the disputed land and the fact that Geisken also maintained the disputed property over the years without being excluded by the Kaufmans."
 {¶ 41} Geisken family members testified they had used the area for recreation, that they had picked up branches and occasionally mowed portions of the disputed tract, and that they had farmed up to the tree line. The Borers and Kaufmans refuted contentions that the Geiskens had maintained the property in any manner and argued that any presence on the property was permissive and would not amount to an actual possession or be in contravention of their claims of ownership. When confronted with the conflicting testimony as to the parties' respective use of the disputed strip, Thomas Geisken conceded that someone was wrong or being untruthful.
 {¶ 42} From the record and resulting judgment, it is apparent the trial court was faced with and made a determination as to the credibility of the witnesses and evidence presented, eventually concluding that Geisken's evidence lacked credibility. The weights to be afforded evidence and witness credibility are matters primarily reserved for the trier of facts and appellate courts are guided by the presumption that the findings of the trier-of-fact were indeed correct.[36] "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."[37]
 {¶ 43} We find nothing in the record that would overcome the trial court's findings. The court was free to discount evidence it found to be incredible, and internal inconsistencies within Geisken witness testimony support the court's findings. Affording appropriate deference to this determination, we find that the record contains sufficient evidence upon which to conclude that the Borers and Kaufmans had continuously and exclusively possessed the property for a period exceeding twenty-one years and that any presence on the property by the Geisken family would not amount to an actual possession sufficient to contravene Kaufmans' claims of ownership. Therefore, because the record contains competent, credible evidence going to the essential elements of the Kaufmans' adverse possession claim, we do not find that the trial court abused its discretion or that its determination is against the manifest weight of the evidence. Accordingly, Geisken's fourth and fifth assignments of error are overruled.
 {¶ 44} Having found no error prejudicial to the appellants herein, in the matters assigned and argued, the judgment of the Putnam County Common Pleas Court is hereby affirmed.
Judgment affirmed.
 BRYANT, P.J., and SHAW, J., concur.
[1] Emphasis added.
[2] Emphasis added.
[3] Sizemore v. Smith (1983), 6 Ohio St.3d 330, 331.
[4] Goodson v. McDonough Power Equipment, Inc. (1983), 2 Ohio St.3d 193,200-201.
[5] Central Trust Co., N.A. v. Jensen (1993), 67 Ohio St.3d 140, 141, quoting Mullane v. Central Hanover Bank Trust Co. (1950),339 U.S. 306, 313-315, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873-874.
[6] Id. at 142.
[7] Mullane, at 317-318, 70 S.Ct. at 659, 94 L.Ed. at 875.
[8] Id.
[9] Central Trust, 67 Ohio St.3d at 141.
[10] Id. at 143.
[11] In re Brodbeck (1994), 97 Ohio App.3d 652, 659, quoting Gerijo,Inc. v. Fairfield (1994), 70 Ohio St.3d 223, 226.
[12] Doe v. Shaffer (2000), 90 Ohio St.3d 388, 390.
[13] Beer v. Griffith (1978), 54 Ohio St.2d 440, 441-442. See, also, R.C. 2701.03; Section 5(C), Article IV, Ohio Constitution.
[14] Id.; Halloway v. Halloway Sportswear, Inc. (June 7, 2001), Shelby App. Nos. 17-98-20, 17-2000-18, 2001-Ohio-2156.
[15] Halloway, supra, citing Volodkevich v. Volodkevich (1988),35 Ohio St.3d 152, 154.
[16] See Colley v. Bazell (1980), 64 Ohio St.2d 243, at paragraph one of the syllabus.
[17] Id.; App.R. 4(A).
[18] Grace v. Koch (1998), 81 Ohio St.3d 577, 580-581.
[19] Cross v. Ledford (1954), 161 Ohio St. 469, 477.
[20] See C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus.
[21] Kimball v. Anderson (1932), 125 Ohio St. 241, 244.
[22] McCune v. Brandon (1993), 85 Ohio App.3d 697, 700.
[23] Lane v. Kennedy (1861), 13 Ohio St. 42, 47.
[24] Swinson v. Mengerink (Dec. 3, 1998), Van Wert App. No. 15-98-10.
[25] Swinson, supra, quoting Klinger v. Premier Properties (Nov. 17, 1997), Logan App. No. 8-97-10; Walls v. Billingsley (Aug. 18, 1992), Allen App. No. 1-92-11.
[26] Jemmewine v. Heinig (Dec. 29, 1995), Greene App. No. 95 CA 12, dismissed, appeal not allowed by, (1996), 76 Ohio St.3d 1405
(citation omitted).
[27] Id., citing Powell, Real Property (1995) 91-23, Section 1013[2][c].
[28] Swinson, supra, (citations omitted.)
[29] Glasser v. Bayliff (Jan. 29, 1999), Montgomery App. No. 98-CA-34, citing Thompson v. Hayslip (1991), 74 Ohio App.3d 829, 833.
[30] Glasser, supra (citations omitted); Swinson, supra; Coburnv. Gebauer (Jan. 11, 1996), Seneca App. No. 13-95-14.
[31] Grace, 81 Ohio St.3d at 582.
[32] Id.
[33] Vanasdal v. Brinker (1986), 27 Ohio App.3d 298, 299.
[34] Emphasis added.
[35] Walls v. Billingsley (April 28, 1993), Allen App. No. 1-92-11, citing 4 Tiffany, Real Property (1975) 736, Section 1141. See, alsoJemmewine v. Heinig (Dec. 29, 1995), Greene App. No. 95 CA 12, dismissed, appeal not allowed by, (1996), 76 Ohio St.3d 1405; Grace v.Koch (Oct. 9, 1996), Hamilton App. No. C-950802, judgment affirmed by (1998), 81 Ohio St.3d 577.
[36] Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
[37] Id.