OPINION
{¶ 1} Robert T. Farley, Jr., defendant-appellant, appeals several judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, rendered in favor of Barbara J. Farley, plaintiff-appellee.
 {¶ 2} This case has an extremely long and contentious history resulting in several appeals to this court. The following facts are summarized from our decision in Farley v. Farley (Aug. 31, 2000), Franklin App. No. 99AP-1103 ("Farley I") and include only those facts salient to the current appeal. The parties were married in 1957, and two children, who are emancipated, were born of the marriage. Early in the marriage, the parties invested in a number of commercial and residential real estate properties, including a seven-acre tract on Fisher Road in Franklin County, Ohio, where Mr. Farley's paving business was based. Mr. Farley managed the rental properties himself, doing business as the R.T. Farley Company, and the rental real estate retained significant value.
 {¶ 3} By 1981, the parties were discussing divorce, and by 1984, the parties permanently separated and discussed a dissolution of their marriage. The parties moved out of the marital home, purchased separate homes, divided their furniture and personal belongings, and discussed final property division of their investments and rental properties. However, Mr. Farley consistently urged Mrs. Farley that, for business reasons, they should not immediately divorce or liquidate any of the real estate properties. During this period, Mr. Farley paid Mrs. Farley substantial support, both cash and in-kind, and paid down substantial indebtedness associated with his now defunct paving and used equipment companies and with the investment properties. The net equity in the real estate properties increased substantially from 1984 to 1996. Mr. Farley also accumulated substantial amounts in mutual fund investments beginning in 1992.
 {¶ 4} Mrs. Farley filed her complaint for divorce on November 26, 1996, and the court issued restraining orders prohibiting Mr. Farley from spending or liquidating various assets. There was no order of temporary spousal support in the case. The matter came to trial on April 13, 1999. The parties stipulated to the individual values of the 11 different investment properties, setting a total stipulated value of $3,808,100. Further, a potentially significant liability was acknowledged as to the two parcels comprising the Fisher Road complex based on the presence of several buried underground tanks and asphalt dumps on the property.
 {¶ 5} The court issued its judgment entry and decree of divorce on September 10, 1999. In the decree, the court found the duration of the marriage to be from April 15, 1957, to April 13, 1999. Along with other divisions and orders, the court ordered that the investment real estate be sold and the net equity, after transaction and remediation expenses, be shared equally between the parties. The court excepted the individual residences and personal possessions of the parties from the marital estate, but ordered the parties' mutual funds and life insurance cash values be equally divided. Mr. Farley was ordered to continue to manage the real estate properties until sales could be effectuated. He was to remain entitled to retain the rental income and tax benefits from the properties, with the concurrent obligation to maintain the properties to preserve their market value. The court also set spousal support payable by Mr. Farley to Mrs. Farley in the amount of $1,500 per month to terminate upon the death of either party, the remarriage of Mrs. Farley, or the completion of the sale and distribution of at least 50 percent of the joint marital investment real estate. The court defined 50 percent of the property as either sale of the Fisher Road complex or sale of five of the nine remaining properties. The court further ordered Mr. Farley to pay Mrs. Farley attorney fees in the sum of $30,000 within 30 days of the judgment.
 {¶ 6} Mrs. Farley subsequently filed two motions to show cause seeking to have Mr. Farley held in contempt for failing to transfer half the mutual fund investments to Mrs. Farley and failing to pay her attorney fees of $30,000 as ordered by the court. Mr. Farley contemporaneously filed a motion for stay of the court's final judgment pending appeal. The motion for stay and motions to show cause were heard on November 2, 1999, and the court granted Mr. Farley's request for a stay pending appeal conditioned upon a bond of $1.7 million. The court then considered Mrs. Farley's motions to show cause, overruled Mr. Farley's motion to dismiss for lack of proper service, and found him in contempt for failure to comply with the terms of the final judgment entry and decree of divorce. On December 3, 1999, after Mr. Farley moved to Florida and failed to properly manage the parties' real estate, attorney A.C. Strip was appointed as receiver with respect to the properties.
 {¶ 7} Mr. Farley appealed from the trial court's judgment finding him in contempt and various aspects of the trial court's final judgment entry and decree of divorce. In Farley I, we overruled five of Mr. Farley's assignments of error and sustained two, finding that the trial court did not sufficiently address the issues of division of the capital gain tax liabilities associated with the rental properties and responsibility for a Bank One line of credit, and finding that personal service was necessary in connection with the contempt proceeding. We also sustained two of Mrs. Farley's assignments of error. Upon remand, the trial court decided that the Bank One credit line debt should be divided equally between the parties. On June 14, 2000, Mr. Farley's counsel was permitted to withdraw, and since that time, Mr. Farley has acted pro se.
 {¶ 8} Numerous pleadings and appeals followed, and on July 16, 2002, Mrs. Farley filed several motions, including a motion for contempt regarding the attorney fees awarded in the decree, an amended motion for contempt regarding the Janus mutual fund awarded in the decree, a motion to declare Mr. Farley a vexatious litigator, a motion for temporary restraining order, and a motion for attorney fees and expenses incurred since the decree. The temporary restraining order was granted ex parte. During this period, Mr. Farley also filed several motions, including a motion to recuse the trial judge, a motion for interim distribution of funds order from receivership instanter, a motion for psychological examinations of Mrs. Farley and one of her attorneys, and a motion for emergency order for equitable adjustment of settlement money paid and to revoke spousal support. Mr. Farley filed a memorandum contra Mrs. Farley's motions, requesting that the trial court make a determination of all the motions without an oral hearing and upon his written statements, as Mr. Farley was in Florida and claimed to be in too poor of health to travel to Ohio for any hearings. On August 22, 2002, Mr. Farley requested a continuance of the August 29, 2002 hearing, which the trial court denied that same day.
 {¶ 9} A hearing on Mrs. Farley's remaining motions was held on August 29, 2002. Mrs. Farley agreed to non-oral hearings on all of the pending motions, except for the motion to show cause regarding the attorney fees awarded to her in the decree. On that same day, the trial court issued a capias for Mr. Farley because he did not appear for the hearing on Mrs. Farley's motion for show cause order as to the issue of attorney fees ordered in the decree. Also, on August 29, 2002, the trial court granted Mrs. Farley's motion for show cause order as to the issue of mutual funds and tax records.
 {¶ 10} Mr. Farley's pending motions were all denied on August 30, 2002. On September 3, 2002, the trial court granted Mrs. Farley's motion to declare Mr. Farley a vexatious litigator and motion to show cause order as to the issue of attorney fees and expenses incurred since the decree. Mr. Farley now appeals various determinations of the trial court, asserting the following assignments of error:
 {¶ 11} "1. The trial court has acted in a manner contrary to the code of judicial conduct and has erred and abused its discretion by failing to recuse after becoming an adversary of the defendant by filing a complaint against defendant with the FBI.
 {¶ 12} "2. Issue of verified motion for recusal: Filed with the court July 25, 2002, the trial court with passion, bias and prejudice, has erred, abused its discretion and acted contrary to Ohio law, in violation of defendant's Due Process Rights, the Code of Judicial Conduct, and the Ohio Law of Professional Responsibility, and the Court's Oath of Office when the court failed to immediately recuse based on the facts set down in the verified motion for recusal. As the result, all hearings, decisions and entries must be reversed and vacated by this court.
 {¶ 13} "3. Issue of vexatious litigation, the trial court, with passion, bias and gross prejudice, erred, abused its discretion and acted contrary to Ohio law, along with the denial of Appellant's Constitutional Right to Due Process of Law in violation of the First, Fifth andFourteenth Amendments of the United States Constitution.
 {¶ 14} "Trial court has muzzled this pro se defendant in pursuit of his Due Process Rights, and the court has erred and abused its discretion by funding the piling on of two plaintiff attorneys with bias and prejudice that seems comparable to the New York Yankees vs. PS # 2 Sandlot Team. This bias is almost criminal.
 {¶ 15} "4. As to the award of plaintiff legal fees to the damage of defendant, the trial court, with passion, bias and gross prejudice, erred, abused its discretion and acted contrary to civil rules and without support of Ohio law when it ordered a distribution of money to the plaintiff Barbara J. Farley for post decree legal fees, including appeal fees, in an amount approaching $100,000 when receivership records show plaintiff has received property division monies in excess of $412,000.
 {¶ 16} "5. As to the inequitable distribution and double distribution of money to the plaintiff. With passion, bias and gross prejudice, the trial court erred, abused its discretion and acted contrary to Oho law and contrary to prior trial court and appellate court decisions when it ordered an inequitable distribution of money to the plaintiff Barbara J. Farley in the amount of $112,621 and sentenced defendant to 30 days in jail for an alleged contempt of court for failure to transfer a sum of money that the record shows had already been transferred to the plaintiff by operation of a receivership of the court established to collect income and distribute money to the litigants. Defendant cannot obtain relief from trial court bias and prejudice with the jurisdiction of the trial court.
 {¶ 17} "6. As to the monthly spousal support of the plaintiff: The trial court with emotional passion, bias[,] prejudice abused its discretion and acted contrary to Ohio law and contrary to prior trial court decisions by ignoring a motion of defendant and allowing spousal support in the amount of $1,500 per month to be continued to an employed plaintiff earning over $50,000 per year to the damage of a retired and disabled defendant a [sic] earning a verified $00 per year.
 {¶ 18} "7. As to the affidavit of opposing counsel Cohen for legal fees: The trial court erred, abused its discretion, and negligently failed to exercise due diligence and acted contrary to Ohio law when it accepted a fraudulent affidavit and a fraudulent legal fees summary from opposing counsel Kim M. Halliburton-Cohen, a known convicted criminal and also under a stayed suspension for numerous wrongs and client rip offs, court conduct which shows a clear bias and alignment with plaintiff to the great damage of the defendant.
 {¶ 19} "8. As to the legal fees of opposing counsel Hart: The trial court erred, abused its discretion, and negligently failed to exercise due diligence and acted contrary to Ohio case law when it accepted an affidavit and legal fees summary from opposing counsel Douglas J. Hart which were an adjunct of the fees of fraudulent fees of Cohen.
 {¶ 20} "9. The trial court further erred and abused its discretion when it approved both the Cohen and Hart legal fees without a hearing as to the correctness of the fees and became an advocate of the plaintiff in approving said fees `by judicial notice' to the great prejudice and damage of the defendant.
 {¶ 21} "10. The trial court further erred and abused its discretion when it approved both the Cohen and Hart legal fees without permitting defendant an opportunity to examine and prepare a defense for such fees at least five days in advance of the hearing date.
 {¶ 22} "11. Lack of due diligence-affidavits for legal fees: The trial court erred, abused its discretion, and negligently failed to exercise due diligence and acted contrary to Ohio case law when it accepted affidavits and approved payment of legal fees to opposing counsel without a hearing, without outside expert testimony as to the correctness of the fees and the trial court became an advocate of the plaintiff `by judicial notice' in approving said fees as to work and hourly rate to the great prejudice and damage of the defendant.
 {¶ 23} "12. Lack of due diligence-affidavits for settlement money: The trial court erred, abused its discretion, and negligently failed to exercise due diligence and acted contrary to Ohio case law when it accepted false affidavits of plaintiff regarding mutual fund monies.
 {¶ 24} "13. Lack of due diligence-As to defendant's motion for psychological examinations. The trial court erred, abused its discretion, and negligently failed to exercise due diligence when it refused to accept the defendant's motion for psychological examinations of plaintiff Barbara Farley and plaintiff attorney Kim M. Halliburton-Cohen, both of whom are confirmed mental patients who conspired to file false affidavits and did file affidavits with the court.
 {¶ 25} "14. Trial court's long term bias and prejudice-The trial court with passion, bias and prejudice, has erred, abused its discretion and acted contrary to Ohio law, in violation of defendant'sFirst Amendment Rights, Due Process Rights, the Code of Judicial Conduct, and the Ohio Law of Professional Responsibility and the Court's Oath of Office on multiple occasions during the past 7 years.
 {¶ 26} "As a direct result of defendant public criticism both during trial and in post decree events, the trial court has a long term history of bias and prejudice which has resulted in a record string of judicial atrocities that are unmatched in the history of the Franklin County Common Pleas Court.
 {¶ 27} "During the 72 month pendency of this action, the trial court judge has not granted one motion of either the defendant or of his attorneys before his own pro se representation became necessary for lack of funds. Prior to reaching the trial stage of the divorce, the magistrate of the court has fairly and with due diligence and objectively, granted several motions of the defendant.
 {¶ 28} "The long standing prejudicial conduct of the court has clearly resulted in the muzzling of the defendant with this vexatious litigator entry, and has deprived this appellant of his due process rights and his ability to litigate his rights as all [sic].
 {¶ 29} "15. Memos and motions of defendant ignored, as a direct consequence of the bias and prejudice of the trial court, the court has ignored memos and motions presented in a lawful and timely manner and deprived defendant/appellant of due process rights, to include not less than the following motions:
 {¶ 30} "A. Verified motion to recuse based on court's clear violation of the Code of Judicial Conduct and the Oath of Office. Filed July 25, 2002 has been ignored.
 {¶ 31} "B[.] Defendant's request for production of documents filed August 27, [2002] has been ignored.
 {¶ 32} "C[.] Defendant's motion for psychological examinations of plaintiff Barbara Farley and plaintiff attorney Kim M. Halliburton-Cohen, both of whom are confirmed mental patients, as filed on August 28, 2002 has been striken.
 {¶ 33} "D. Defendant's verified motion for emergency order for equitable adjustment of settlement money paid and to revoke spousal support for the plaintiff has been ignored."
 {¶ 34} We first note that Mr. Farley's brief fails to separately argue each of his assignments of error as required under App.R. 16(A)(7). Ordinarily, this court could, in its discretion, disregard such errors under App.R. 12(A)(2). To the extent that we are able to discern Mr. Farley's arguments, however, we will address his assignments of error.
 {¶ 35} We will address Mr. Farley's first, second, and fourteenth assignments of error together, as they are related. Mr. Farley asserts in his first and second assignments of error that the trial judge erred in refusing to recuse herself from this matter. Mr. Farley argues in his fourteenth assignment of error that the trial court's judgments are the result of a long-term bias against him. We first note that the trial judge recused herself on November 18, 2002, albeit for reasons other than those alleged by Mr. Farley. Therefore, the issue of recusal is moot. Notwithstanding, this court lacks jurisdiction to determine whether a trial judge's decision to recuse or not is correct. If Mr. Farley believed that the trial judge was biased or prejudiced against him at any stage of the trial court proceedings, his remedy was to file an affidavit of prejudice with the clerk of the Ohio Supreme Court. R.C. 2701.03. R.C. 2701.03 "provides the exclusive means by which a litigant may claim that a common pleas judge is biased and prejudiced." Jones v. Billingham (1995), 105 Ohio App.3d 8, 11. Only the Chief Justice of the Ohio Supreme Court or his designee has the authority to determine a claim that a common pleas court judge is biased or prejudiced. Beer v. Griffith (1978), 54 Ohio St.2d 440, 441. Thus, an appellate court is without authority to pass upon issues of disqualification or to void a judgment on the basis that it resulted from judicial bias. See id. at 441-442. Therefore, Mr. Farley's first, second, and fourteenth assignments of error are overruled.
 {¶ 36} Mr. Farley argues in his third assignment of error that the trial court erred in finding him to be a vexatious litigator pursuant to R.C. 2323.52. R.C. 2323.52(A)(3) provides:
 {¶ 37} "`Vexatious litigator' means any person who has habitually, persistently, and without reasonable grounds engaged in vexatious conduct in a civil action or actions, whether in the court of claims or in a court of appeals, court of common pleas, municipal court, or county court, whether the person or another person instituted the civil action or actions, and whether the vexatious conduct was against the same party or against different parties in the civil action or actions. * * *"
 {¶ 38} R.C. 2323.52(A)(2) provides:
 {¶ 39} "`Vexatious conduct' means conduct of a party in a civil action that satisfies any of the following:
 {¶ 40} "(a) The conduct obviously serves merely to harass or maliciously injure another party to the civil action.
 {¶ 41} "(b) The conduct is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law.
 {¶ 42} "(c) The conduct is imposed solely for delay."
 {¶ 43} The trial court found through a variety of motions, requests, memoranda and other pleadings that Mr. Farley had habitually, persistently, and without reasonable cause filed harassing and malicious pleadings designed to injure Mrs. Farley, to wit: Mr. Farley attempted to intimidate Mrs. Farley by persistent, frivolous misrepresentation of the law and facts of the within case; by the sheer volume of pleadings that failed to conform with the law as to content and/or service; by meritless and unfounded complaints to various administrative, disciplinary, and law enforcement agencies designed to intimidate or stifle Mrs. Farley's counsel, the court's appointed receiver, and the court; by his refusal to abide by court orders; and by his endless and tedious reiteration of identical issues that he advanced originally in the pre-decree divorce and that both the trial court and this court had already ruled on to his detriment. The trial court further found that none of Mr. Farley's pleadings for the prior two years had been warranted by existing law, and only one minor request (to lower the sale price of a house sold to his daughter) had been found to have merit. In addition, the court noted that Mr. Farley had availed himself of several courts in this jurisdiction during the prior two years without success. He attempted to have Mrs. Farley and her counsel prosecuted, and sought relief in the general division of the common pleas court, all attempts of which were unsuccessful. The court also stated that Mr. Farley had indicated that his "payback" would continue and attached to a recent memorandum contra irrelevant "evidence," which included libelous attacks on Mrs. Farley's counsel. The trial court further found that Mr. Farley refused to appear in person in court to protect any of his claimed rights, always alleging he was too infirm to travel from Florida to Ohio, and there was a warrant for his arrest on a contempt issued on August 29, 2002.
 {¶ 44} Mr. Farley counters that he is simply a litigant who answers each motion, memorandum, or pleading by a plaintiff, receiver, or others in a judicial proceeding. He claims all of his pleadings were warranted under existing law and supported by a good-faith argument. He also contends none were intended to be harassing or injurious. We disagree. On June 14, 2000, Mr. Farley's counsel was permitted to withdraw. Since that time, Mr. Farley has acted pro se and has filed a barrage of actions, pleadings, memoranda, letters, and motions that obviously serve to merely harass his wife and his wife's counsel, not to mention the trial court and its employees. Various pleadings also were imposed solely for delay, containing repetitive propositions of law and arguments that the trial court had rejected myriad times previously.
 {¶ 45} Although Mr. Farley's pro se pleadings were, for a brief time, at least arguably proper and based on debatably reasonable objections to various court actions, Mr. Farley's conduct soon traveled far out of the bounds of mere "aggressive" litigation and continues in this same vein up to the current appeal. On July 11, 2000, for the first time after becoming pro se, Mr. Farley attached, as an exhibit to his motion to vacate the order of the court permitting his counsel to withdraw, one of his numerous "news releases," which is a ten-page "newsletter" containing various "articles" authored by Mr. Farley that he periodically mails to various government and court employees, family, and friends. These newsletters document his view of the proceedings of this litigation. Although directed largely at Mr. Farley's perceived injustices perpetrated by the trial judge and his former attorneys, Mr. Farley's "newsletters" also contain countless personal attacks upon Mrs. Farley regarding, among other subjects, her personal life, morals, and mental stability. Although such mailings outside the court system may have more tenuous applicability to a vexatious litigator determination, Mr. Farley's attachment of these writings to numerous pleadings, as well as the attachment of several of the "newsletters" to his appellate brief, bring them squarely within consideration. Obviously, these malicious attachments are purely for harassment purposes and serve no support for his often spurious legal arguments. Further, the content of myriad pleadings parrot the same personal assaults that are contained in the "newsletters" without any evidentiary support for the accusations.
 {¶ 46} In addition, Mr. Farley has consistently repeated arguments and legal theories that have been rejected by the trial court numerous times. Although Mr. Farley was perfectly within his rights to contest the applications by the receiver to sell property, of which he contested every one, his motions all contained the same underlying theory: that the appointment of the receiver was illegal and that the receiver was biased against him. Mr. Farley also contested all of the receiver's reports and applications for fees based upon identical reasoning. Mr. Farley also moved at least twice to dissolve the receivership, to which he had originally agreed by personal signature. Despite the trial court's rejection of Mr. Farley's arguments on these issues when first raised, he continued to file objections upon every application by the receiver and raised these identical issues in numerous other pleadings and motions. Given the trial court's prior rulings, Mr. Farley's unremitting conduct was not warranted, and the same arguments and legal bases could not be raised repeatedly in good faith. Further, consistent with his other court documents, he also used these pleadings to attack the trial court, the court's past decisions, the receiver, the attorneys, and Mrs. Farley. Although it is impossible to definitively determine whether such filings were intended as an attempt to delay the sale of the properties, we do note that Mr. Farley reiterated on several occasions that he believed the properties were being sold at the wrong time, given the overall decline in the stock market and the "safe haven" many considered real estate to be at the time.
 {¶ 47} In addition to the personal attacks against his wife, the court, and every attorney involved in the matter, nearly every pleading filed by Mr. Farley contains arguments on issues already decided by the original decree, our appellate decisions, or subsequent trial court decisions. Countless pleadings also contain the same repetitive criticism of prior court decisions or actions. Despite these matters being settled and far beyond appeal, Mr. Farley continues to raise perceived claims of bias, inequality, and unfairness. He also has on numerous occasions raised issues the trial court has found moot based upon its previous decisions. Having no good-faith basis to raise these decided issues, Mr. Farley's actions serve no other purpose than to delay the proceedings and slow the inevitable conclusion of these matters. These actions constitute vexatious conduct within the meaning of R.C. 2323.52. See Georgeadis v. Dials (Dec. 9, 1999), Franklin App. No. 99AP-232 (noting that attempts to relitigate matters which have been previously adjudicated constitute vexatious conduct). We find cases such as Pisani v. Pisani (Nov. 18, 1999), Cuyahoga App. No. 74799, distinguishable from the present case. Mr. Farley's actions were not merely as an inexperienced pro se litigant, but were of a vexatious litigant whose goal was to harass and annoy. See id.
 {¶ 48} We also note that, although Mr. Farley tries to distinguish his actions from other cited cases because he has not filed separate, repetitive actions, such distinction is irrelevant. As the wording of R.C. 2323.52(A)(3) readily indicates, the finding that a person is a vexatious litigator can be based upon his or her behavior in a single civil action or multiple civil actions. Therefore, Mr. Farley's behavior in just the single case currently before us is clearly within the purview of R.C. 2323.52.
 {¶ 49} As the Ohio Supreme Court has held, the objective of the statute is to prevent the abuse of the system by vexatious litigators who deplete judicial resources, "unnecessarily [encroach] upon the judicial machinery needed by others for the vindication of legitimate rights," and attempt "to intimidate public officials and employees or cause the emotional and financial decimation of their targets." Mayer v. Bristow (2000), 91 Ohio St.3d 3, 13. Mr. Farley's incessant filings and "newsletters" disparage and attempt to coerce and intimidate the trial court, the court employees, the receiver, his wife's attorneys, and his own former attorneys. These filings and "newsletters" certainly seek his wife's emotional and financial destruction. Further, his repetitive arguments and unrelenting pleadings on issues already decided have congested the judicial process and hindered the trial court's and receiver's lawful duties. His persistent and tedious grievances inserted into every pleading of every type have amounted to an unnecessarily massive record. His tormenting of every party whom he sees as aiding his wife has risen to the level of compulsiveness.
 {¶ 50} We appreciate the sentiments of the Hamilton County Court of Appeals in Borger v. McErlane (Dec. 14, 2001), Hamilton App. No. C-010262, in its analysis of a vexatious litigator:
 {¶ 51} "[I]n Borger's troubled mind her conduct may be entirely justified and a necessary response to the malevolent forces that she believes are allied against her. There is ample evidence that her persecution complex has completely impaired her judgment, and that in its thrall she truly believes herself to be the object of a nefarious conspiracy. In the real world, however, her conduct is injurious. Significantly, vexatious conduct, as defined in R.C. 2323.52(A)(2)(a), requires proof that Borger's conduct serves merely to harass or maliciously injure another party to the civil action. (Emphasis supplied.) It is not necessary, therefore, that Borger intends for her conduct to be harassing, or that she not sincerely believe in the justness of her cause. Rather, it is sufficient that her conduct serves the purpose, or has the effect, of harassing McErlane by obligating her to respond to a legal action for which there is no objective, reasonable grounds."
 {¶ 52} In the present case, it is apparent Mr. Farley believes that the court system, the attorneys, the receiver, and his wife have participated in a conspiratorial effort to destroy him and the businesses he built during his marriage. It is possible that, in Mr. Farley's eyes, under all the hostility and delusions of corruption and malfeasance, he merely longs for a fair and just result; however, to the impartial observer, Mr. Farley has been given his day in court and has received justice. What Mr. Farley actually seeks is to have the outcome be in accord with his personal desires. However, human nature being what it is, it is often quite impossible to see the forest of justice for the trees of self-interest. With any judicial system, the receipt of justice often fails to coincide with the outcome desired by all participants. For the foregoing reasons, the trial court did not err in finding Mr. Farley to be a vexatious litigator, and Mr. Farley's third assignment of error is overruled.
 {¶ 53} We will address Mr. Farley's fourth, seventh, eighth, ninth, tenth, and eleventh assignments of error together, as they are all related to the trial court's award of attorney fees. Mr. Farley argues in his fourth assignment of error that the trial court erred when it ordered a distribution of money to Mrs. Farley for post-decree legal fees when receivership records show she has received property division monies in excess of $412,000. Mr. Farley asserts in his seventh assignment of error that the trial court erred in accepting a fraudulent affidavit and a fraudulent legal fees summary from Mrs. Farley's attorney Kim Halliburton-Cohen. He asserts in his eighth assignment of error that the trial court erred in accepting the affidavit and legal fees summary from Mrs. Farley's attorney Douglas Hart. Mr. Farley argues in his ninth and eleventh assignments of error that the trial court erred when it approved both the Halliburton-Cohen and Hart legal fees without a hearing or expert testimony as to the correctness of the fees and in approving said fees "by judicial notice." Mr. Farley argues in his tenth assignment of error that the trial court erred when it approved both the Halliburton-Cohen and Hart legal fees without permitting him an opportunity to examine and prepare a defense for such fees at least five days in advance of the hearing date.
 {¶ 54} On July 15, 2002, Mrs. Farley filed a motion for attorney fees and expenses, asserting that since the original decree she had incurred substantial attorney fees to enforce the terms of the decree as a result of Mr. Farley's conduct. The matter came on for a non-oral hearing by agreement of the parties on August 29, 2002. The trial court issued a decision on August 30, 2002, in which it found that Mr. Farley, by secreting himself in Florida, by refusing to abide by the court's orders, by his willful attempts to interfere with the lawful endeavors of the receiver, by his constant attempts to intimidate and harass Mrs. Farley, her counsel, the court, and the receiver, by his refusal to attend hearings, and by his filing of lengthy and burdensome pleadings devoid of proper service, has been the sole reason for Mrs. Farley's enormous difficulty and expense in enforcing the decree. The trial court awarded Mrs. Farley $45,842.50 for fees and $698.18 in expenses incurred with regard to her attorney Kim Halliburton-Cohen, and $51,649 for fees and $85 in expenses incurred with regard to her attorney Douglas Hart.
 {¶ 55} The decision of whether or not to award attorney fees in a divorce action is within the sound discretion of the trial court. Rand v. Rand (1985), 18 Ohio St.3d 356, 359. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. R.C. 3105.18(H) provides, in relevant part:
 {¶ 56} "In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to, any appeal * * * if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees."
 {¶ 57} Mr. Farley first argues that the trial court erred in taking judicial notice that the hourly rates charged by Mrs. Farley's attorneys were reasonable and consistent with the hourly rates charged by other attorneys in their respective areas of expertise with similar experience. Although a trial court should generally rely upon some expert evidence regarding the reasonableness of an attorney's hourly rate, where the value of the services is so obviously reasonable that it may be determined as a matter of law, judicial notice may be taken. While it would have been more preferable to provide expert testimony or averments as to the normal range of fees charged in the community for these services, we find the trial court did not err in finding the hourly rates charged by Mrs. Farley's attorneys to be reasonable. Other courts have found that a trial court may take judicial notice of the reasonableness of attorney fees. See Phillips Mille Co., L.P.A. v. Danish (Nov. 2, 2000), Cuyahoga App. No. 77538 (the trial court took judicial notice that the fees were at a reasonable and customary rate within the legal profession); see, also, Anca v. Anca (May 3, 1996), Miami App. No. 95-CA-33; Stallard v. Stallard (July 13, 1994), Greene App. No. 93 CA 58; and Kelley v. Kelley (Apr. 22, 1983), Allen App. No. 1-82-49 (the fees normally charged in the community are matters which are subject to judicial notice, and the general fee range in divorce cases is a matter generally within the scope of the trial court's knowledge).
 {¶ 58} We also note that Mr. Farley cannot now argue that he was not given an advance copy of the attorney fees submitted by Mrs. Farley when he refused to appear for a hearing on the matter. He had requested to have the issue of attorney fees heard by the trial court pursuant to the written pleadings. Mrs. Farley did not agree to this until the day of the hearing. There was no entry regarding determination of the fees prior to the day of this hearing. Further, Mr. Farley's August 22, 2002 request for a continuance of the August 29, 2002 hearing was denied. Until the trial court filed an entry permitting a continuance or agreeing to hear the matter on written pleadings only, Mr. Farley should have been prepared to appear in court to contest and litigate the matters scheduled for hearing. In addition, as he was previously ordered to pay attorney fees and is quite familiar with the legal process at this stage, he was certainly aware that Mrs. Farley's attorneys would be submitting fee affidavits on the date of the hearing to support their request. Mr. Farley has decided to reside in a location far away from this court and he cannot now complain about difficulties that arise as a result of the situation he has created. Therefore, these arguments are without merit.
 {¶ 59} Mr. Farley also argues that the trial court's award of fees was not reasonable. He contends that he does not have the ability to pay the fees because he is in poor health, incapacitated, has no annual income, and has received substantially less from the divorce than his wife. However, the trial court noted that Mr. Farley removed nearly $200,000 from mutual funds and nearly $150,000 in "pre-rental" income from the Fisher Road property. Further, the court ordered these fees to be paid out by the receiver directly from the proceeds of the sale of marital property, and the trial court may properly take this into account. See Trott v. Trott (Mar. 14, 2002), Franklin App. No. 01AP-852. Thus, Mr. Farley has the ability to pay the fees.
 {¶ 60} Mr. Farley also asserts that the trial court erred in finding that Mrs. Farley would be unable to litigate her rights without an award of attorney fees, given that she is employed and has already received several hundred thousand dollars from the divorce decree and receivership disbursements. However, although Mrs. Farley has received property and cash as a result of the decree that would have enabled her to pay her own attorney fees, she incurred additional attorney fees and expenses directly attributable to Mr. Farley's conduct. Mr. Farley's actions as detailed above support a finding that the costs involved in enforcing the divorce decree may have prevented Mrs. Farley from fully litigating her case. See id. Ohio courts have upheld attorney fees as "reasonable" under R.C. 3105.18(H) when one party intentionally caused the other party to incur unnecessary, substantial fees during the litigation or when one party has otherwise been responsible for much of the litigation. See id; Kelly-Doley v. Doley (Mar. 12, 1999), Lake App. No. 96-L-217; Stewart v. Stewart (Apr. 17, 1998), Montgomery App. No. 16649; Berry v. Van Gulijk (Sept. 29, 1994), Logan App. No. 8-93-31; Hansen v. Hansen (Dec. 11, 1992), Lake App. No. 92-L-052; see, also, Farley v. Farley (1994), 97 Ohio App.3d 351, 357 ("[t]he court must look at various tactics used during the entire case to determine whether those tactics are used to delay the proceedings and increase attorney fees regardless of who pays the fees. The court must also examine the conduct of the parties to determine at what point the quest for justice ceases, and the use of the legal system as a tool for punishment, harassment, coercion, and intimidation of the other party begins"). Thus, an award of attorney fees was warranted because Mr. Farley's noncompliance with court orders and lack of cooperation resulted in Mrs. Farley having to incur substantial additional attorney fees. See Pournaras v. Pournaras (June 26, 1986), Cuyahoga App. No. 50782; Matyas v. Matyas (Jan. 17, 1985), Cuyahoga App. No. 48645. Further, the trial court noted that the vast majority of fees to both of Mrs. Farley's attorneys remains unpaid. Therefore, although the trial court properly stated its reasons for awarding attorney fees, citing the proper statutory language under R.C.3105.18(H), and gave specific reasons to support the findings, the trial court also had an independent basis for awarding Mrs. Farley attorney fees based on Mr. Farley's activities throughout the course of the divorce proceedings.
 {¶ 61} Mr. Farley also argues that the trial court erred in accepting the affidavits of attorneys Halliburton-Cohen and Hart. He first asserts that the Hart and Halliburton-Cohen fees include fees that occurred during the trial and first appeal phases of the case. Although he does not elucidate further, our own review of the fee summaries indicate that all of the fees included in both attorneys' summaries were incurred after the final hearing on the divorce. Mrs. Farley's motion for fees specifically requested an award for all fees incurred since the final hearing. Even to the extent that some of the fees awarded related to the underlying trial and appeal, the trial court was well within its power to award such fees pursuant to R.C. 3105.18(H) based upon the numerous reasons cited in its judgment. Therefore, it was not error for the court to award the fees from that date. Further, we also reject his argument that it was improper to award fees for Halliburton-Cohen's conversations with "non-litigants," and also reject his unsupported assertions regarding "purely personal" conversations. Consistent with Mr. Farley's actions throughout these proceedings, he also contends that Halliburton-Cohen's fee affidavit should be discredited based upon purely inflammatory references to Halliburton-Cohen's personal life and numerous matters entirely unrelated to the present case. We reject these contentions without further comment. For the foregoing reasons, Mr. Farley's fourth, seventh, eighth, ninth, tenth, and eleventh assignments of error are overruled.
 {¶ 62} We will address Mr. Farley's fifth and twelfth assignments of error together, as they both concern the contempt finding and jail sentence ordered by the trial court on August 29, 2002, for his failure to transfer to Mrs. Farley her share of a mutual fund as ordered in the original divorce decree. On November 26, 2002, Mrs. Farley filed a notice of satisfaction of interim order notifying the trial court that the receiver had paid to her the sum ordered in the court's August 29, 2002 order, thus staying the jail sentence imposed upon Mr. Farley by the order. An appeal from a contempt charge is moot when a defendant has made payment or otherwise purged the contempt. State v. Berndt (1987),29 Ohio St.3d 3, 4; Caron v. Manfresca (Sept. 23, 1999), Franklin App. No. 98AP-1399. Therefore, because the receiver has paid the sums ordered to be paid in the contempt order, Mr. Farley has effectively purged his contempt and is no longer subject to incarceration, and the matter is now moot. Mr. Farley's fifth and twelfth assignments of error are moot.
 {¶ 63} Mr. Farley argues in his sixth assignment of error that the trial court erred by ignoring one of his motions and allowing spousal support in the amount of $1,500 per month to be continued to an employed woman earning over $50,000 per year when he is retired and disabled and earns nothing. First, we note that the trial court did not ignore his motion and, in fact, denied Mr. Farley's August 26, 2002 motion to revoke spousal support on August 30, 2002. Next, we note that Mr. Farley makes no specific argument in his appellate brief regarding this issue, merely directing us to his motion filed at the trial court level and making a passing reference to this issue in his statement of the case within his brief. Although both his brief and his motion filed at the trial court level are somewhat convoluted, we gather that the gist of his current complaint in this appeal is based upon the provision in the divorce decree that ordered spousal support to Mrs. Farley to terminate upon the completion of the sale of at least 50 percent of the joint marital and rental properties, with 50 percent being defined as the sale of the Fisher Road property or the sale of five of nine of the remaining joint properties. Mr. Farley apparently contends that, because all nine properties have now been sold, as well as a portion of the Fisher Road property, spousal support should terminate. However, Mr. Farley fails to acknowledge that in Farley I, supra, this court sustained Mrs. Farley's first assignment of error and specifically found that the trial court erred setting a termination date based upon the partial sale of the properties as defined in the decree. We found in Farley I that the appropriate award of support would be one of indefinite duration, with continuing jurisdiction to later set a termination date based upon the same factors already considered in establishing the initial need for spousal support.
 {¶ 64} As far as any other arguments Mr. Farley intended to pursue in this assignment of error, we will not address them as they are not properly or clearly set forth in his brief before us. App.R. 16(A)(7) requires an appellant to provide an "argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." It is not the duty of this court to make arguments in support of an appellant's assertions and to search the record for evidence in support of our position. Helman v. EPL Prolong, Inc. (2000),139 Ohio App.3d 231, 240. Mr. Farley has the burden of affirmatively demonstrating error on appeal, and in this respect, he has failed. See Liggins v. Westminster Arms, Inc. (Dec. 22, 1998), Franklin App. No. 98AP-377. As we have observed before, although proceeding pro se, Mr. Farley is not entitled to disregard the appellate rules and is held to the same obligations and standards that apply to all litigants. Sabouri v. Ohio Dept. of Job Family Serv. (2001), 145 Ohio App.3d 651,654. Therefore, Mr. Farley's sixth assignment of error is overruled.
 {¶ 65} Mr. Farley argues in his thirteenth assignment of error that the trial court erred when it refused to grant his motion for psychological examinations of Mrs. Farley and attorney Halliburton-Cohen. On August 28, 2002, Mr. Farley filed a motion for psychological examinations of Mrs. Farley and Halliburton-Cohen. The trial court denied the motion on August 30, 2002. Mr. Farley's motion was made pursuant to Civ.R. 35(A), which provides:
 {¶ 66} "When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit himself to a physical or mental examination or to produce for such examination the person in the party's custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or person by whom it is to be made."
 {¶ 67} The granting or denial of a Civ.R. 35 motion rests within the sound discretion of the trial court. In re: Guardianship of Johnson (1987), 35 Ohio App.3d 41, 43.
 {¶ 68} Obviously, Civ.R. 35(A) limits mental examinations to parties. Thus, the trial court did not err in denying the motion with respect to Halliburton-Cohen. As to Mrs. Farley, Mr. Farley has failed to demonstrate that her mental condition was in controversy. The substantive issues have already been resolved in this matter. The decree has been filed, and appeals on the substantive matters have been exhausted. Although the issue of spousal support remains modifiable by the trial court, the only significant issue presently remaining is the receiver's sale of the remaining real estate and his disbursement of the proceeds. None of these remaining issues bring Mrs. Farley's mental condition into controversy. The rule contemplates that the order for an examination be made only on motion for good cause shown, and Mr. Farley has failed to make such a showing. Therefore, the trial court did not err in denying Mr. Farley's motion with regard to Mrs. Farley. Mr. Farley's thirteenth assignment of error is overruled.
 {¶ 69} Mr. Farley argues in his fifteenth assignment of error that the trial court erred in "ignoring" his motion to recuse, his August 27, 2002 request for production of documents, his motion for psychological examinations, and his motion for emergency order for equitable adjustment of the settlement money paid and to revoke spousal support for Mrs. Farley. We have already rejected arguments related to Mr. Farley's motion to recuse, his motion for psychological examinations, and his motion for emergency order for equitable adjustment of the settlement money paid and to revoke spousal support for Mrs. Farley. As to his request for production of documents, Mr. Farley has presented no argument in his brief relating to this issue, and, therefore, we find it without merit. Mr. Farley's fifteenth assignment of error is overruled.
 {¶ 70} Accordingly, Mr. Farley's first, second, third, fourth, sixth, seventh, eighth, ninth, tenth, eleventh, thirteenth, fourteenth, and fifteenth assignments of error are overruled, and his fifth and twelfth assignments of error are moot. The judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, are affirmed.
Judgments affirmed.
BROWN, BRYANT, and LAZARUS, JJ., concur.